## ORMSBY *et al.* v. PHENIX INS. CO. OF BROOKLYN.

1. The mortgage clause agreement annexed to the policy of insurance in this action constitutes a new contract between the insurer and the mortgagee, which, so long as the conditions therein contained are complied with, suspends the effect of the stipulations of the policy as to the acts of the owner or mortgagor which will forfeit the policy.

2. The stipulations in the mortgage clause agreement annexed to the policy of insurance that "the insurance as to the interest of the mortgagee or trustee only therein shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, or by the occupation of the premises for purposes more hazardous than are permitted by the terms of the policy; * * * provided, also, that the mortgagee or trustee shall notify the company of any change of ownership or increase of hazard which shall come to his or her knowledge, and shall have permission for such change of ownership or increase of hazard duly endorsed on the policy,"—constitute conditions and not covenants.

3. Failure on the part of the mortgagee to comply with the conditions in the mortgage clause agreement suspends the operation of the same, and leaves in force and effect the stipulations in the policy as to the acts on the part of the owner or mortgagor that will operate to forfeit the policy.

4. The evident design and the legal effect of such condition is to require the mortgagee to notify the insurer of any change of ownership or increase of hazard which shall come to his knowledge, as a condition of continuing such stipulations in force.

5. The burden of proving that the conditions contained in the mortgage

clause agreement have not been complied with by the mortgagee or trustee rests upon the insurer.

6. The record of foreclosure proceedings, the regularity of which is not questioned, instituted to foreclose a subsequent mortgage upon the insured property, and the sheriff's deed thereunder, made prior to the loss, in which the owner or mortgagor to whom the policy was issued is made a party and duly served with summons, is admissible as evidence to prove a change of ownership of the property insured.

7. Such record of the proceedings to foreclose the subsequent mortgage, and the sheriff's deed thereunder,—such foreclosure action being in the name of one E. S. Ormsby, one of the plaintiffs herein, as plaintiff in that action, and instituted for the American Investment Company, of which said Ormsby was president—was admissible in evidence as tending to prove that Ormsby and the American Investment Company had knowledge of a change of ownership of the property insured prior to the loss, although evidence had been previously given on the trial that the owner of the property had conveyed the same to a third person prior to the commencement of such foreclosure proceedings.

8. Evidence was admissible to prove that the insurer had no notice of such foreclosure proceedings, or any change of ownership of the property, prior to the loss.

9. Evidence was introduced on the trial tending to prove that E. S. Ormsby one of the plaintiffs in this action, was the plaintiff in the foreclosure proceedings, and received the sheriff's deed as trustee of the American Investment Company, of which he was the president, and for which the foreclosure proceedings were instituted and carried on, and that he and the investment company were the agents of Mary F. Crosby, one of the plaintiffs, and the real party in interest in this action, "to the extent of making collections and remittances, and attending to all taxes, insurances, and foreclosures, and any other matters necessary to the protection" of her interests in North and South Dakota and Iowa. *Held,* that such evidence should have been submitted to the jury, as tending to prove facts from which the knowledge of said Ormsby and the investment company of a change of ownership of the property was imputable to the plaintiff, Mary F. Crosby.

(Syllabus by the Court. Opinion filed March 3, 1894.)

Appeal from circuit court, Aurora county. Hon. E. G. SMITH, Judge.

Action on a policy of insurance. There was judgment for plaintiffs and defendant appeals. Reversed.

The facts are fully stated in the opinion.

*H. C. Preston,* for appellant.
*W. M. Smith* and *Soper, Allen & Morling,* for respondents.

CORSON, P. J. On July 3, 1885, Mary J. Simons procured through the American Investment Company a loan, for which she executed a bond for $1,000 to F. A. Huggins, and at the same time, to secure the payment of the said bond, executed a trust deed to E. S. Ormsby, one of the plaintiffs herein, upon a quarter section of land in Aurora county, this state. To further secure the $1,000 loan, Mrs. Simons procured from the defendant an insurance policy, issued to herself, upon the building on the premises mortgaged, the loss, if any, to be paid to the trustee or holder of the bond; and there was annexed to and made a part of the policy a mortgage clause, the material parts of which are as follows: ''Loss, if any, payable to E. S. Ormsby, trustee, for F. A. Huggins, or the holder of the bond for $1,000, dated July 3, 1885, given to said F. A. Huggins and secured by mortgage to said E. S. Ormsby, trustee, as the mortgage interest may appear at date of loss. It being hereby understood and agreed that this insurance, as to the interest of the mortgagee or trustee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, or by the occupation of the premises for purposes more haza dous than are permitted by the terms of this policy; provided, that in case the mortgagor or owner neglects or refuses to pay any premium due under this policy, then, on demand, the mortgagee or trustee shall pay the same; provided, also, that the mortgagee or trustee shall notify this company of any change of ownership or increase of hazard which shall come to his or her knowledge, and shall have permission for such change of ownership or increase of hazard duly endorsed on this policy; and provided, further, that every increase of hazard not permitted by the policy to the mortgagor or owner shall be paid for by the mortgagee or trustee, on reasonable demand, and after demand made by this company upon, and refused by

the mortgagor or owner to pay according to the established schedule of rates. It is, however, understood that this company reserves the right to cancel the policy as stipulated in the printed conditions in said policy, and also to cancel this agreement on giving ten day's notice of their intention to the mortgagee or trustee named herein. From after the expiration of the said ten days this agreement shall be null and void. *   * It is also agreed that whenever this company shall pay the mortgagee or trustee any sum for loss under this policy, and shall claim that as to the mortgagor or owner no liability therefor existed, it shall at once and to the extent of such payment be legally subrogated to all rights of the party to whom such payment shall be made under any and all security held by such party for the payment of said debt. *   *   *" This policy bears date of August 24, 1885, and the mortgage clause was annexed at the same time. On January 17, 1886, the said bond was duly assigned to the plaintiff, Mary F. Crosby, who has ever since continued to be its owner and holder, and at the same time the original trust deed was delivered to her. The complaint is in the usual form.

The answer denies certain allegations of the complaint, and sets up as defenses to the action: (1) That the said Mary J. Simons gave a second mortgage to Ormsby, Clute & Co., bearing date July 3, 1885, on said property, of which no notice was given to the defendant; (2) that said second mortgage was foreclosed, and the property purchased under the sale of said foreclosure by the American Investment Company, no notice of which was given to the defendant; (3) that the said Mary J. Simons conveyed said property to one John Fowler in 1886, of which transfer no notice was given to the defendant; (4) that the possession of said property was changed, and at the time of the loss the premises were in the possession of a tenant of the American Investment Company, but of which change of possession no notice was given to the defendant, and that the plaintiffs had full notice and knowledge of said second mortgage,

the foreclosure of the same, and change of possession of the premises. And it is further alleged that, by the terms of the policy, the execution of the second mortgage, transfer of the property, and change of possession rendered the policy void; and, as a further defense, it is alleged that proofs of loss were not made within the time prescribed by the policy. The policy contains, among others, the following stipulations: "If there be a mortgage or other incumbrance thereon, it must be represented to the company, * * * otherwise the policy shall be void." "If the property be sold or transferred, * * * or any change takes place in title or possession, * * * whether by legal process or judicial decree, or voluntary transfer or conveyance, * * * then, in every such case, the policy shall be void." On the trial the defendant introduced evidence tending to prove that Mrs. Simons on July 3, 1885, executed a second mortgage on the premises described in the trust deed, to Ormsby, Clute & Co., of which firm plaintiff Ormsby was a member, of which no notice was given to the defendant; and defendant offered evidence tending to prove that said mortgage was foreclosed, and the property sold, and bought in by the American Investment Company, the successor of Ormsby, Clute & Co., and that the premises were at the time of the loss in possession of said American Investment Company, by its tenant, and no notice of these transfers and change of possession was given to defendant. Upon objection this evidence was excluded by the court, and at the close of the trial the court directed a verdict for the plaintiffs. Numerous errors are assigned, but we do not deem it necessary to insert them. They relate chiefly to the rulings of the court in the exclusion of evidence offered by appellant, and the admission of evidence objected to by appellant, and to which rulings of the court the appellant duly excepted. Such of these rulings as we deem important to notice will be discussed in the opinion.

In the view we take of the case, the decision of the questions involved must be determined upon the construction to be

placed upon the mortgage clause,—as to what extent the plain-
tiffs were bound by the stipulations in the policy itself, and the
effect, as to the plaintiffs, of a violation of these stipulations by
the owner or mortgagor,—and whether or not there was suffic-
ient evidence to submit to the jury that the knowledge of
Ormsby, Clute & Co., and the American Investment Company,
could be imputed to Mary F. Crosby. It is contended by the
learned counsel for appellant that the mortgage clause should
be construed as a part of the policy, and that any violations of
the provisions of the policy that rendered the policy void as
against the mortgagor, Mary J. Simons, rendered it void as
against the mortgagees, if they had knowledge thereof, and
failed to give notice of the same to the defendant. The re-
spondents contend that the mortgage clause constitutes a sep-
arate contract between the defendant and the mortgagees, and
that by the terms of said mortgage clause, no neglect of the
owner of the pr operty could render the policy void as to them,
and that although they had knowledge of the acts that would ren-
der the policy void as to the owner, and failed to give the notice
specified, the policy would not be void as to them, for the rea-
son that no forfeiture is provided for in the mortgage clause.
It will be noticed that the mortgage clause contains two im-
portant provisions. One is "that the insurance as to the inter-
est of the mortgagee or trustee only therein shall not be invali-
dated by any act or neglect of the mortgagor or owner of the
premises insured, or by the occupation of the premises for pur-
poses more hazardous than are permitted by the terms of the
policy; provided," etc. And the other is "that whenever the
company shall pay the mortgagee or trustee any sum for loss
under the policy, and shall claim that as to the mortgagor or
owner no liability therefor existed, it shall at once, and to the
extent of such payment, be legally subrogated to all the rights
of the party to whom such payment shall be made, under any
and all security held by such party for the payment of said
debt." As will be observed, the first clause is clearly intended

for the benefit of the mortgagees, and relieves them from the liabilty of the forfeiture of the insurance by reason of the acts of the owner or mortgagor, provided they comply with the terms of the contract on their part; and the other is as clearly for the benefit of the insurer, who, upon the payment of a loss, may be subrogated, to the extent of the loss, to the security held by the mortgagees, when the insurer would not be liable to the owner or the mortgagor. Such a contract of insurance stands upon precisely the same basis as any other contract, and must be interpreted according to its purport. It is quite obvious from the mortgage clause that the design of the parties was to secure to the plaintiffs the amount named in the policy of insurance in case of loss by fire, and that the defendant should pay the same with the right of subrogation in the place of the plaintiffs in case of the happening of the contingency stated therein, unaffected by the acts or negligence of the mortgagor. By this agreement the mortgagees acquired additional rights over those of an ordinary assignee or mortgagee.

The legal effect of the mortgage clause is that the defendant, upon a valid consideration, agrees to pay the loss, if any, directly to the mortgagees, and they are by the agreement recognized as a distinct party in interest so long as they comply with the terms of the mortgage clause agreement. It creates a new agreement with the mortgagees, the terms of which clearly indicate that it has no relation to the stipulations of the mortgagor as to the acts that will avoid the policy, so long as the mortgagees comply with their agreement. It is an independent agreement, partaking in no sense of the character of an assignment of the policy or of the usual clause of loss, if any, payable to the mortgagee. It is certain, therefore, that the mortgagees became insured under a new contract. Hastings v. Insurance Co., 73 N. Y. 141; Insurance Co. v. Olcott, 97 Ill. 439; City, etc., Savings Bank v. Pennsylvania Insurance Co., 122 Mass. 163; Insurance Co. v. Floyd, 19 Hun. 287; Foster v. Insurance Co., 2 Gray 216; Ellis v. Council Bluffs Ins. Co., 64

Iowa 511, 20 N. W. 782; Ellis v. Insurance Co. of North America, 32 Fed. 494; National Bank of D. O. Mills & Co. v. Union Ins. Co., 88 Cal. 497, 26 Pac. 509. But, notwithstanding the mortgage clause constitutes a new agreement between the defendant and mortgagee, there is, nevertheless incorporated into it certain portions of the original contract of insurance with the owner or mortgagor. The property insured, the amount insured, terms of policy, and rate of insurance must be determined by the original policy. In addition thereto the stipulations contained in the original policy may, under certain circumstances, be in force and effect. It will be noticed that the stipulation in the mortgage clause is that the insurance as to the interest of the mortgagee shall not be invalidated by any act or neglect of the owner or mortgagor, provided that in case the owner or mortgagor neglects or refuses to pay any premium due under this policy, then, on demand, the mortgagee or trustee shall pay the same; and provided, also, that the mortgagee or trustee shall notify the company of any change of ownership or increase of hazard which shall come to his or her knowledge and shall have permission for such change of ownership or increase of hazard endorsed upon the policy.

We think the term "provided" as here used, must be construed as a condition, for such is clearly the intention of the parties. "Provided" is defined by Webster as: "On condition; by stipulation." Mr. Bouvier, in his Law Dictionary, says: "A proviso always implies a condition, unless subsequent words change in to a covenant." Mr. Anderson, in his Dictionary of Law, says of "provided:" "No better word expresses a condition, and it is always so taken, unless the context shows that the intent was to create a covenant." Rich v. Atwater, 16 Conn. 409. In this case there appears to be nothing in the subsequent language of the agreement indicating that the term "provided" is intended as a covenant. Therefore the clause in the mortgage contract that the insurance as to the interest of the mortgagee should not be invalidated by any act or neglect of the

mortgagor or owner of the property insured ceases to be operative whenever there is a change of ownership or an increase of hazard that comes to the knowledge of such mortgagee, and he fails or neglects to give notice of the same to the insurer, and has permission for such change of ownership or increase of hazard indorsed on the policy. It is only upon compliance with these conditions that the insurer has agreed to so suspend the orignal stipulations in the policy. Therefore, if in the case at bar there was a change of ownership of the property insured, of which the plaintiff, Mary F. Crosby, through her agent or agents, had knowledge, but of which she failed or neglected to give notice to the defendant, and have permission for such change af ownership indorsed upon the policy, the first clause in the mortgage agreement ceased to be operative as to her, and she thereafter held her insurance subject to the original terms of the policy. The stipulations in the original policy were only suspended as to her upon the express condition that she should comply with the terms of the original mortgage clause agreement; and, when she failed to comply with the terms of that agreement, the stipulations in the original policy came into force, and remained in force until the stipulations in such agreement were complied with. So, if the facts were as alleged—that there was a change in the ownership of the property before a loss occurred, and Mary F. Crosby had knowledge of the same, and failed or neglected to notify the defendant, and have permission for such change indorsed upon the policy—the mortgage clause agreement no longer protected her while she so failed or neglected to comply with the conditions of the same, and she held her insurance thereafter subject to the conditions of the original policy, at least until she should comply with the conditions of the mortgage clause agreement.

With these observations upon the nature of the contract between the parties, we will now proceed to consider some of the errors assigned, confining ourselves, however, to such er-

rors as relate to the alleged violation of the mortgage clause contract, as the burden was upon the defendant to show that the stipulations in that contract had not been complied with, in order to enable it to establish its defense to the action. The defendant introduced evidence tending to prove that, prior to the loss, the said Mary J. Simons conveyed said insured property by warranty deed to John Fowler. This evidence therefore, tended to prove one of the defenses set up in the answer. Whether or not it would constitute a defense depended upon proving knowledge of such conveyance by Mary F. Crosby, or knowledge of her authorized agent which was imputable to her, and failure to notify the defendant. It was one step in the defense. The defendant also offered in evidence the record and sheriff's deed in an action to foreclose the second mortgage upon the insured property, in which E. S. Ormsby and others were plaintiffs, and Mary J. Simons and others were defendants. This record and sheriff's deed were objected to by counsel for the plaintiff, on the ground that the same were incompetent and immaterial, and because the deed purports to have been made in the action in which Mary J. Simons and Colvard D. Simons were parties defendant, and the evidence shows a transfer from Mary J. Simons to one Fowler, and Fowler is not a party to the suit. The objection was sustained, and the evidence excluded. In excluding this evidence, we are of the opinion that the learned court erred. The defendant in its answer had pleaded the change of ownership through the foreclosure proceedings, and it should have been permitted to prove the facts alleged. Section 4915, Comp. Laws, provides that a defendant may set forth in his answer as many defenses as he may have. The only restriction made upon this right is that they must be separately stated, and refer to the causes of action that they are intended to answer. Stebbins v. Lardner, (S. D.) 48 N. W. 847. By the foreclosure proceedings and the sheriff's deed thereunder the title of Mary J. Simons, if she

had any, was divested, as she was a party to the action. The
defendant was not estopped from making this proof, because it
had introduced evidence tending to prove that the ownership of
the property had been changed·by a conveyance of the prop-
erty by Mary J. Simons to said Fowler. The evidence was not
offered to prove title in Ormsby as·trustee for the investment
company, but to prove that Mary J. Simons had been divested of
her interest in the property. The effect of the foreclosure pro-
ceedings, and the sheriff's deed under it, were to divest the
said Mary J. Simons of any title she might have had prior to
the decree of foreclosure. The counsel may have had some
reason for considering the deed from Mary J. Simons to Fow-
ler defective, and, to guard against any question on that point,
he had a right to introduce the record under his answer to
prove that her title was divested in that manner, if it had not
passed by her deed to Fowler. But the record of the foreclos-
ure proceedings was clearly admissible on another ground.
This record tended to prove that Ormsby and the investment
company had knowledge at the time the sheriff's deed was exe-
cuted under the foreclosure proceedings that the ownership of
the property was changed. Whether such change of owner-
ship resulted from the foreclosure proceedings, or had occurred
prior thereto, was not material. The evidence tended to prove
that the fact came to their knowledge at that time, and if their
agency was such that their knowledge could be imputed to the
plaintiff, Mary F. Crosby, it became her duty under the mort-
gage clause to notify the defendants of such change of owner-
ship to preserve her rights under the contract. The foreclos-
ure record may not have established the fact that by such pro-
ceedings the title to the property passed to Ormsby as trustee
under the sheriff's deed, for the reason that the property had
been previously conveyed to Fowler, who was not made a party
to the action, yet it did tend to prove that, if the said Mary J.
Simons had any title, it passed by these proceedings, and that
Ormsby and the American Investment Company then had

knowledge that Mary J. Simons had ceased to be the owner of the property.

But it is further insisted by the respondent that this evidence was inadmissible for the reason that there was no evidence tending to prove that the American Investment Company or E. S. Ormsby sustained such relation of agents to Mary F. Crosby, the real party in interest, as would authorize a jury in finding that either of those parties was her agent, or authorize a court or jury to impute their knowledge to her. But we cannot assent to this proposition. We are of the opinion that there was sufficient evidence, at least, to submit to a jury that these parties sustained such relations to Mary F. Crosby as would have made the knowledge of the agent the knowledge of the plaintiff. She says in her deposition that she had been acquainted with E. S. Ormsby since 1883, and had done business with him since that time; that the American Investment Company and E. S. Ormsby had done business for her in the states of North and South Dakota and Iowa, to the extent of making collections and remittances and attending to all taxes, insurances and foreclosures, and any other matters necessary to protect her interests. And it appears from the evidence in this case that all transactions pertaining to the collection of the insurance money in controversy were by or under the American Investment Company. This, with other evidence introduced upon this subject, was sufficient to require this, with the other questions in the case, to be submitted to a jury. All the proceedings, including the sheriff's deed in the foreclosure action of Ormsby and others against Mary J. Simons and others, were therefore admissible for the purpose of showing that the title of Mary J. Simons, if she had any, was divested by that proceeding, and as tending to prove that E. S. Ormsby and the American Investment Company at that time had knowledge of a change of ownership of the property prior to the loss. We are of the opinion, also, that the evidence tending to prove that the defendant had never received any notice of such change of

ownership should have been admitted, and that the court in ex-cluding this evidence erred. The evidence was both competent and material. We have not attempted to follow the learned counsel through the various propositions contained in their exceedingly able briefs, nor to consider all the questions raised by them, as many of these questions may not arise in another trial, but we have only discussed what seemed to us the more important questions in the case. The conclusions at which we have arrived lead to a reversal. The judgment of the circuit court is reversed, and a new trial granted; and it is so ordered.