### JOHNSON, SANSOM & CO. v. FORT WORTH STATE BANK. (No. 10017.)

(Court of Civil Appeals of Texas. Fort Worth. June 24, 1922.)

**Subrogation �come⊃26—Insurance agents voluntarily paying premium no right of recovery of owner's mortgagee.**

Agents of an insurance company, who voluntarily pay the company the premium on a policy containing a mortgage clause, without any agreement of the mortgagee to pay them, have no right of recovery therefor against the mortgagee, on default of the owner and mortgagor, either on the ground of subrogation to any right of the company under the mortgage clause or otherwise.

Appeal from Tarrant County Court; W. P. Walker, Judge.

Action by Johnson, Sansom & Co. against the Fort Worth State Bank. Judgment for defendant, and plaintiff appeals. Affirmed.

Robert Sansom and Phillips, Trammell & Caldwell, all of Fort Worth, for appellant.

Bryan, Stone & Wade, of Fort Worth, for appellee.

BUCK, J. Plaintiffs Johnson, Sansom & Co., a copartnership composed of Americas G. Johnson and Frank M. Sansom, doing an insurance agency business in Fort Worth, Tex., on December 23, 1920, sued the Fort Worth State Bank, a corporation, for certain premiums on insurance policies issued by certain companies represented by plaintiffs on a building or buildings belonging to the Citizens' Flour & Milling Company. Plaintiffs alleged that the Fort Worth State Bank loaned the milling company some $10,000, and took a mortgage on its property to secure the bank, and that said policies of insurance were, by contract and arrangement between the milling company and the bank to be delivered to the bank and kept by it until the loan had been paid. That said policies contained the following clause:

"Mortgage clause with full contribution. To be attached only to policies covering in whole, or in part, on real property.

"Loss or damage, if any, on building items under policy, shall be payable to ——— as ——— mortgagee (or trustee), as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

"Provided, also, that the mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee), and unless permitted by this policy, it shall be noted thereon, and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

"This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation, and shall then cease, and this company shall have the right, on like notice, to cancel this agreement.

"In case of any other insurance upon the within described property, this company shall not be liable under this policy for a greater proportion of any loss or damage sustained than the sum hereby insured bears to the whole amount of insurance on said property, issued to or held by any party or parties having an insurable interest therein, whether as owner, mortgagee or otherwise.

"Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee (or trustee) the whole principal due, or to grow due, on the mortgage, with interest, and shall thereupon receive a full assignment and transfer, of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of ——— claim.

"Attached to and forming part of policy No. ——— of the ———, issued at its ———, Texas, agency.

"Dated ———.    ———, Agents."

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

244 S.W.—42

Plaintiffs alleged that the milling company had failed and refused to pay any part of the premiums charged on the policies, and had been at the time of the filing of the suit adjudged a bankrupt, and consequently was not made a party to the suit. That plaintiffs were informed and believed that there were not enough assets of said milling company to more than pay the secured creditors, and that unless they were successful in collecting said premiums from the defendant bank the plaintiffs would not be able to realize anything out of their debt.

Defendant answered by way of a general demurrer, by certain special exceptions, and specially pleaded that from the time the policies herein mentioned were issued, to wit, August 26, 1919, January 21, 1920, and February 4, 1920, until about September 1, 1920, that the milling company was a solvent concern, having assets out of which the indebtedness of plaintiffs could have been made by due process of law, and had on deposit in the defendant bank moneys far in excess of the amount due plaintiff, which deposit would have been subject to any offset which the defendant might have held as the result of having paid an obligation for which said milling company was primarily liable; that about the last-named date said milling company became insolvent, and on November 5th thereafter filed its voluntary petition in bankruptcy, and was duly adjudged a bankrupt on November 30, 1920, and its assets placed in the hands of a receiver or trustee; that the defendant did not know until November 22, 1920, that the premiums had not been paid by the milling company, which was primarily liable.

The defendant denied that it was ever liable to said plaintiffs for said premiums, but pleaded that, if any liability existed on its part, by reason of the delay and failure on the part of the plaintiffs to collect the premiums from the milling company while it was solvent and a going concern, and the failure of plaintiffs to notify the defendant that said premiums had not been paid prior to the insolvency of said milling company, the plaintiffs were estopped from claiming the amount from the defendant.

Plaintiffs filed their first supplemental petition June 23, 1920, specially pleading that no facts had been pleaded by the defendant showing that plaintiffs were under any obligation to notify defendant of the failure or neglect of the milling company to pay said insurance premiums, nor showing that plaintiffs were under any obligation to make any demand upon defendant therefor within any specified time. They specially pleaded that defendant had notice and knowledge of the terms of the mortgage clauses, hereinabove set out, and attached to the policies, and that under said clauses defendant was liable for said premiums if the milling company should fail or refuse to pay them.

In the trial amendment, filed June 24th, plaintiffs pleaded that they had already remitted to the insurance companies, which they represented, and which issued the policies heretofore mentioned, the premiums due on said policies; that they were duly bound to remit said premiums to said companies, and that they thereby became subrogated in all respects to all rights which said insurance companies had in said policies and under the mortgage clause aforesaid.

Upon a trial, the court instructed the jury to return a verdict for the defendant and from a judgment entered upon such verdict the plaintiffs have appealed.

Since this is an appeal from a judgment entered upon an instructed verdict, it becomes our duty to give the strongest effect to any testimony which tends to show that the plaintiffs were entitled to recover. Mr. Sansom, one of the plaintiffs, testified that the plaintiffs wrote no policies of insurance of their own, but merely issued them as agents for insurance companies; that their services as such agents were compensated for by commissions. By plaintiffs' plea in their trial amendment, it is shown that the plaintiffs had already paid the premiums due the companies, and hence, if defendant can be held liable in this suit, it must be upon the ground that it originally either expressly or impliedly promised the insurance companies to pay said premiums, upon default of the milling company, and that plaintiffs were subrogated to the rights of said insurance companies by reason of the payment to them of such premiums.

If the appellants have any claim against the appellee by reason of subrogation to the rights of the insurance companies, then it is proper for us to consider the rights such insurance companies would have had under the facts shown. The evidence shows that the policies were delivered by plaintiffs to the president of the defendant; that the defendant's president knew that a mortgage clause was attached to the policies, but did not have actual notice that any provision was therein contained to the effect that in any event the bank would be liable for the payment of the premiums, in case the milling company failed to pay them. Nor did the bank know that the premiums had not been paid until the milling company had become insolvent. The plaintiffs charged said premiums on their books against the milling company, and tried from September 1, 1919, till the milling company filed a petition in bankruptcy to collect the amount from it, over 14 months. It is further agreed that the deed of trust contained an agreement and stipulation between the milling company, the mortgagor, and the bank, as mortgagee, that the former would at its own expense, keep the property insured and deliver the policies to the bank's custody. Under these facts, it has been held that if the bank had voluntarily paid the premiums,

it could not have collected said amount from the milling company. Culver et al. v. Brinkerhoff, 180 Ill. 548, 54 N. E. 585, 587.

It has been held that the insured is bound by the terms of a policy whether he reads the policy or not and where he had no actual knowledge of its contents. But the bank in the instant case was not a party to the contract of insurance between the insurance company and the milling company. Williston on Contracts, vol. 1, p. 164, par. 90d, says:

"The principle of acceptance by conduct may be involved, not only when all the terms of a contract are contained in a writing, but also when it is sought to import into a contract a statement printed on a letter heading or tag upon goods, or in some other paper delivered to the acceptor. The sole question seems to be whether the facts present a case where the person receiving the paper should as a reasonable man understand that it contained terms of the contract which he must read at his peril, and regard as part of the proposed agreement. The precise facts of each case are important in reaching a conclusion." Lancaster et al. v. Sanford et al. (Tex. Civ. App.) 225 S. W. 808.

In 13 Corpus Juris, p. 278, par. 77, it is said:

"An offeree is not bound by the unknown terms of a document by his acceptance of the same without objection, where the document delivered to him purports to be, and would by a reasonable man be understood to be, merely a check or voucher, and not a contract, as in the case of a baggage receipt or check, an ordinary railroad ticket, and other receipts or papers of a similar character. A purchaser of a book from the agent of the publisher is not bound by a notice printed therein, restricting his title, unless the terms thereof are distinctly declared and deliberately accepted by the purchaser."

.In 6 R. C. L. p. 627, par. 45, it is said:

"A great number of contracts are made by the delivery by one of the contracting parties to the other of a document in common form, stating the terms by which the person delivering it will enter into the proposed contract. If the form is accepted without objection by the person to whom it is tendered, this person is, as a general rule, bound by its contents, and his act amounts to an acceptance of the offer made to him, regardless of whether he reads the document, or otherwise, informs himself of its contents. To this general rule, however, there are a variety of exceptions. In the first place the nature of the transaction may be such that the person accepting the document may suppose, not unreasonably, that the document contains no terms at all, but is a mere acknowledgment of an agreement not intended to be varied by special terms. For instance, it has been decided by some courts that one who receives a ticket that appears to be a mere check, showing the points between which he is entitled to be carried, and that contains conditions on its back which he does not read, is not bound by such conditions."

But even if the mortgage clause be given effect, the question is presented, Does the clause amount to a covenant on the part of the bank to pay the premiums, or does it amount to a condition subsequent, the breach of which would render the policies null and void? It is urged by appellee bank that the clause does not contain a covenant to pay; that if the bank refused to pay the premiums on demand, the insurance company had but one remedy, a right to cancel the policies. In Home Insurance Co. v. Union Trust Co., 40 R. I. 367, 100 Atl. 1010. L. R. A. 1917F, 375, the Supreme Court of Rhode Island construed this exact clause. The mortgage clause as to insurance in that case was as follows:

"And the company covenants and agrees with the trustee that insurance against loss by fire shall be kept and maintained on the buildings and personal property liable to destruction or damage by fire covered by this indenture, in such insurance companies as the trustee shall approve, in a sum not less than one hundred and twenty thousand dollars ($120,000), and that the policies of such insurance shall be assigned and transferred or made payable in case of loss to the trustee as collateral security hereto."

The insurance company sued the trustee in the deed of trust claiming liability on account of his having accepted the policies having a rider the same as the one in this case attached thereto. The court denied recovery, and in rendering its decision said:

"The plaintiff claims that the words in the mortgage clause 'Provided that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same,' import a contract by the mortgagee to pay the premium if the mortgagor does not pay it. The defendant claims that this clause should be construed as a condition, and not as an agreement. To decide this question we must determine the true meaning of the clause in question. The word 'provided' in instruments of this character in general has a well-settled legal meaning, and, construed in its natural and primary sense, imports a condition, and not an agreement.

"In Bouvier's Law Dictionary the following definition is given: 'A proviso always implies a condition unless subsequent words change it to a covenant.'

"In Rich v. Atwater, 16 Conn. 409, page 419, the court says: 'The proviso, it is said, requires such a construction. There has been much nice discussion upon the word "provided." Cromwell's Case, 2 Coke, 72, 76 Eng. Reprint, 579; Kindler v. Leversage, Cro. Eliz. pt. 1, p. 242, 78 Eng. Reprint, 497; Pembroke v. Berkley, Cro. Eliz. pt. 1, p. 385, pt. 2, p. 560, 78 Eng. Reprint, 631, 805; Harrington v. Wise, Cro. Eliz. pt. 2, p. 486, 78 Eng. Reprint, 737; Geery v. Reason, Cro. Car. 128, 79 Eng. Reprint, 713. It is certain, as is said by Judge Swift, that there is no word more proper to express a condition than this word "provided"; and it shall always be so taken, unless it ap-

pears from the context to be the intent of the parties that it shall constitute a covenant.'

"There is nothing in the context of this instrument which requires a construction of this clause as a covenant. The parties have used the technical word 'provided,' to which the courts in numerous cases have applied a certain well-known construction. The mortgagee clause in question is in the standard form, and presumably was carefully worded by experienced lawyers who were familiar with the customary legal construction of the word. Had the intention been that the word 'provided,' as used in this clause, should not be given its primary legal meaning and effect, but that the clause should be construed as a covenant rather than a condition, any possible ambiguity could easily have been removed by the addition of a few words such as 'and it is agreed' or any similar phrase. In Hastings v. Westchester F. Ins. Co., 73 N. Y. 141, decided in 1878, the mortgagee clause in the policy of fire insurance on which suit was brought contained the following words: 'It is also provided and agreed.' The omission of such specific words of agreement in later forms, such as the one now in question, is of some significance.

"It is admitted by the plaintiff in its reply brief that the second clause in the rider, to wit, 'Provided also that the mortgagee (or trustee) shall notify this company of any change of ownership or occupancy,' etc., is a strict technical condition subsequent. It is argued that the fact that the phrase 'otherwise this policy shall be null and void' is found only at the end of this proviso, and that it is separated from the rest of the clause only by a semicolon, and that the preceding proviso ends with a period, indicates that the words quoted above are intended to qualify the second proviso only, and not the first, and that the second proviso is independent of the first and is of a different nature. The effect of this argument is much weakened by the fact that the second proviso, which is of the same general character as the first, follows it immediately, and is connected with it by the words 'provided also.' We think both clauses are subsidiary to the main part of the mortgagee clause, and that the words 'otherwise the policy shall be null and void' are applicable to, and should be read with, both provisos. So read, its effect clearly makes both clauses conditions subsequent.

"Under this construction of the two provisos, the effect of the mortgagee clause as a whole would be as follows: It would, as stated in the case of Smith v. Union Ins. Co., supra, constitute a separate contract between the insurance company and the mortgagee, entered into at the same time as the contract between the insurance company and the mortgagor, and based upon the same condition. While it would come into existence as soon as the policy was delivered, it would not become active until some default, by nonpayment of the premium or otherwise, had been made by the mortgagor. Then it would come into full force and effect, and would give the mortgagee an independent right against the insurance company, which would, however, be subject to certain conditions subsequent. One of these would be that, if any part of the premium remained unpaid, the mortgagee would have to pay it upon demand or it would lose its rights

under its independent contract, without being under any obligation to pay the unpaid premium if it preferred to let the policy lapse.

"This construction protects fairly the interests of the insurance company and the mortgagee. The insurance company is entitled to the payment of the premium on the delivery of the policy, and consequently has the power to protect itself fully, without recourse to the mortgagee. It is in a position at all times, with full knowledge of the facts in regard to the payment of premiums, to call for payment from the mortgagor, and, if dissatisfied, can cancel the policy by giving the prescribed notice. On the other hand the mortgagee in many cases has no means of knowing whether the premium has been paid, and, as the insurance company must first make demand on the mortgagee for payment before rights of the mortgagee can be affected by the failure of the mortgagor to pay, it would impose an unreasonable burden on the mortgagee to require it to keep constant watch on the condition of the account between the insurance company and the mortgagor in order to protect itself from liability for unpaid premiums."

Under the note, page 379 of the last-cited case, the annotater discusses the claimed conflict of decisions upon the question here under consideration. In Coykendall v. Blackmer (1914) 161 App. Div. 11, 146 N. Y. Supp. 631, the New York court held that the clause constituted a condition and not a covenant, saying:

"The only question, therefore, before us is whether the plaintiff as a matter of law is entitled to a recovery; that is, whether the clause, 'provided that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same,' should be construed as a covenant upon the part of the mortgagee to pay the premium in the event of the neglect of the mortgagor to pay the same, or should be construed merely as a condition which, if not complied with by the mortgagee, would foreclose him of the right to a recovery given him in the preceding portion of the mortgagee clause, notwithstanding the happening of any of the prohibited matters specified therein, which under the conditions of the policy itself would render the policy void. It must be conceded that unless the clause in question constituted a covenant, no recovery can be had in this action. We are of the opinion that the word 'provided' was used in the sense of 'if' or 'on condition,' and hence that the clause referred to should be construed as a condition and not as a covenant. * * *

"The apparent meaning of the mortgagee clause is that the insurance, as to the interest of the mortgagee, shall not be invalidated by any act or neglect of the mortgagor if the mortgagee shall on demand pay any unpaid premium, and hence that if the mortgagee shall on demand neglect or refuse to pay the unpaid premium he shall no longer be entitled to avail himself of the stipulation that no act or neglect upon the part of the mortgagor shall invalidate the policy, but the insurance of the interest of the mortgagee shall thereafter be governed by the policy itself, and this was

doubtless the relation of the mortgagee and the insurance companies following the demand of the company for the payment of the premium in January, 1911, and the neglect of the mortgagee to pay the premiums."

See Ormsby v. Phenix Insurance Co., 5 S. D. 72, 58 N. W. 301, to the same effect.

To the contrary, the annotator cites St. Paul Fire & Marine Insurance Co. v. Upton, 2 N. D. 229, 50 N. W. 702, Boston Safe Deposit & Trust Co. v. Thomas, 59 Kan. 470, 53 Pac. 472, and Colby v. Thompson, 16 Colo. App. 271, 64 Pac.' 1053. Upon these cases appellants rely for a reversal of the judgment. In Cooley's Briefs on Insurance, vol. 2, p. 918, the author lays down the rule that:

"If a policy delivered to a mortgagee contains a clause providing that no negligence on the part of the mortgagor shall invalidate the insurance, and that, in case the mortgagor refuses or neglects to pay any premium due, the mortgagee shall pay it on demand, this amounts to a contract on the part of a mortgagee to pay the premium on the mortgagor's default, and not merely a condition, on the performance of which he may, at his option, entitle himself to the benefits of the clause."

In support of the rule, is cited the three cases last mentioned. However, the author states that in the Colorado case the mortgagee had promised, on being notified that the policy would be canceled for default payment, that he would pay the premium if the mortgagor did not do so. Therefore the decision in the Colorado case is doubtless distinguishable from the instant case and the Rhode Island and other cases to the same effect on the facts. The North Dakota case and the Kansas case above cited are referred to in the opinion in Coykendall v. Blackmer, supra, and are distinguished. In Safe Deposit Co. v. Thomas, supra, so says the court in Coykendall v. Blackmer:

"The agent of the mortgagee negotiated with the agent of the insurance companies for the insurance, furnished the mortgagee slips, and the mortgage contained a covenant upon the part of the mortgagor to pay the insurance premiums and a provision that if such payments were not made the mortgagee might pay the premiums, and that the amount so paid, with interest at the rate of 12 per cent. per annum, should be a lien on the premises. The court apparently considered this clause, providing for the reimbursement of the mortgagee for any premiums paid by him as important as bearing upon the intention of the parties that the mortgagee clause should be construed as a covenant. The mortgage in the case at bar contained no such provision."

In the North Dakota case, cited in Coykendall v. Blackmer, apparently the question before the court was as to the sufficiency of the complaint or petition to allege a cause of action by the insurance company against the mortgagee. The cause provided as follows:

"Loss, if any, payable to Hiram D. Upton, mortgagee, or his assigns, as hereinafter provided; it being understood and agreed that this insurance, as to the interest of the mortgagee only therein, shall neither be invalidated by any act or neglect of the mortgagor or owner of the property insured, nor by the vacancy of the premises, nor by the occupation of the premises for purposes more hazardous than are permitted by the terms of this policy, provided that, in case the mortgagor or owner neglects or refuses to pay any premium due under this policy, then, on demand, the mortgagee shall pay the same; provided, also, that the mortgagee shall notify this company of any change of ownership or increase of hazard which shall come to his knowledge, and shall have permission for such change of ownership or increase of hazard duly indorsed on this policy; and provided, further, that every increase of hazard not permitted by the policy to the mortgagor or owner shall be paid for by the mortgagee on reasonable demand, and after demand made by the company upon and refusal by the mortgagor or owner to pay according to the established schedule of rates."

It does not appear there was a provision in this clause that in case the mortgagee should fail to pay the premium on demand that the policy should be null and void; at least there is no reference to such provision. Hence there is another distinguishing feature, in addition to the one referred to in Coykendall v. Blackmer.

From a rather extended and careful examination of the authorities cited respectively by appellants and appellee, and many others, we have concluded that the trial court did not err in giving the peremptory instruction for defendant, and the judgment is affirmed.

The majority concur in the conclusion reached that the judgment of the trial court should be affirmed, since in their opinion the evidence conclusively showed that there was no contract on part of the bank to pay plaintiffs, and that the payment of the insurance premiums by appellants to the insurance company was purely a voluntary payment, without any right acquired by them of subrogation to any original right of the insurance company to demand such payment by the bank; and that after acceptance of such payment, the insurance company had no right to cancel the policy by reason of the fact that the payment had not been made by the bank. Hence the majority deem it unnecessary to determine the merits of the other questions discussed in the opinion of Associate Justice BUCK, and therefore they express no opinion thereon.