BARRY & BREWER v. WRIGHT.

(In Banc. Oct. 9, 1933. Suggestion of Error Overruled Nov. 13, 1933.)

[150 So. 186. No. 30605.]

Alfred **Stoner**, of Greenwood, for appellant.

218

Wells, Jones, Wells & Lipscomb, of Jackson, amici curiae.

Chalmers Potter and A. J. Von Bloombergh, both of Jackson, for appellant.

**H. Talbot Odom**, of Greenwood, amici curiae.

222

H. C. Mounger, of Greenwood, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellants, Barry & Brewer, are insurance agents in the city of Greenwood. On October 18, 1930, they issued and delivered to John Dahmer a fire insurance policy for seven thousand five hundred dollars on a store building owned by Dahmer in said city; and on November 2, 1930, another policy for five thousand dollars on the same building. Each of said policies was for one year, and the premium on the first was one hundred eighty-six dollars and seventy-five cents, and on the second one hundred twenty-four dollars and fifty cents. The policies were issued upon the application of Dahmer, but the appellee, Wright, held a mortgage on the insured property, and the policies, with mortgage clauses in Wright's favor, were upon issuance delivered to and were kept by Wright. The policies were issued on terms of sixty days' premium credit to Dahmer, and the amounts of the premiums were charged on the agents' books to the account of Dahmer. Under the agency contract between the insurance agents and the company or companies for whom they acted, there was an obligation on the part of the agents to pay to the company or companies any premium or premiums, less agent's commissions, which had been due for more than sixty days. Dahmer did not pay the premiums or either of them at the end of sixty days, and in accordance with their contract aforesaid the agents remitted to the company the premiums, less agent's commissions.

Thereafter, on August 18, 1831, and while these premiums remained wholly unpaid by Dahmer, there was a damage by fire to the insured building, which damage amounted to the sum of one hundred dollars and fifty cents under the first policy and sixty-seven dollars under the second, a total of one hundred sixty-seven dollars and fifty cents. Shortly after this fire, and before the expiration of the year from the date of the policies, appellants for the first time demanded of Wright the payment of the premiums, to which demand Wright declined to accede. Appellants then requested that the company checks for the amount of the said loss might be retained by appellants as a credit on the premiums, and this Wright also refused. Wright, the mortgagee, took the defensive position that the premiums had already been paid to the insurance company, although paid by the agents as aforesaid, and that even if not paid, there was no liability against him for the premiums until demand made on him therefor, and that no such demand was made until after the fire and the loss had occurred. Dahmer was later adjudged a bankrupt, and although the policies have expired, no part of the premiums have been paid either by Dahmer or by Wright.

Some time after the expiration of the policies, the insurance company delivered the said sum of one hundred sixty-seven dollars and fifty cents into court, and filed therewith its bill of interpleader making Dahmer, and Wright and the insurance agents, parties, so that said parties defendant could appear and litigate the issue as to which of them was entitled to said fund. The appellants, insurance agents, and Wright, the mortgagee, by appropriate pleadings accepted the issue and, upon the hearing, the court awarded the funds to Wright and the insurance agents appealed.

The first question that we must notice is the contention on the part of appellee that the agents are not entitled to recover in their own names or for their own account; that

they were mere volunteers in making the payment of the premiums to the company; and that no premium is in default, the company having already received the premiums. We have no difficulty on that question. We are all in accord upon it, and we hold that where an insurance company looks to its agent for the payment of premiums on insurance written by him and credit has been extended to an insured by the agent who thereafter, in the discharge of the aforementioned obligation due to his principal, pays a premium which the insured has failed to pay, the agent upon such payment is subrogated to all the rights and remedies of the insurance company in respect to the premiums, and may demand and sue for the same in his own right and in his own name. Lamb v. Connor, 84 Wash. 121, 146 P. 174, and cases there cited. See, also, Boston Co. v. Thomas, 59 Kan. 470, 53 P. 472; Weisman Insurance Agency v. Bass, 14 La. App. 207, 127 So. 635; 26 C. J., p. 116; 33 C. J., p. 67; 24 R. C. L., p. 878.

The principal question argued is whether the mortgage clause, section 5185, Code 1930, creates as against the mortgagee, to whom there has been delivered a policy with that clause attached in his favor, a covenant or absolute promise on his part to pay the premium on the owner's default, or whether that clause, as it appears in the statute, imports a mere condition by which the mortgagee at his option, when demand is made of him for the premium, may avail himself of the benefits of the clause by the payment of the premium demanded, or by the payment of that part of the premium which is apportionable to the amount of the mortgagee's interest in the property.

The decisions are in conflict on that question, and both sides to it are supported by forceful reasoning. St. Paul Fire & Marine Ins. Co. v. Upton, 2 N. D. 229, 50 N. W. 702; Boston Safe Deposit & Trust Co. v. Thomas, 59 Kan. 470, 53 P. 472; Colby v. Thompson, 16 Colo. App. 271, 64 P. 1053; Security Ins. Co. v. Eakin, 41 Ga. App. 257, 152 S. E. 606; Stoddart v. Black, 134 Kan. 838, 8 P. (2d) 305,

83 A. L. R. 100; Coykendall v. Blackmer, 161 App. Div. 11, 146 N. Y. S. 631; Home Ins. Co. v. Union Tr. Co., 40 R. I. 367, 100 A. 1010, L. R. A. 1917F, 375; Farnsworth v. Refining Co., 35 Wyo. 334, 249 P. 555, 47 A. L. R. 1114; Acuff Co. v. Trust Co., 157 Tenn. 99, 7 S. W. (2d) 52; Olmsted & Co. v. Ins. Co., 118 Ohio St. 421, 161 N. E. 276; Schmitt v. Gripton, 77 Cal. App. 429, 247 P. 505; Whitehead v. Wilson Mills, 194 N. C. 281, 139 S. E. 456, 56 A. L. R. 674; Ormsby v. Ins. Co., 5 S. D. 72, 58 N. W. 301; Trust Co. v. Phoenix Ins. Co., 201 Mo. App. 223, 210 S. W. 98; 26 C. J. 113. It is to be observed, however, that a close analysis of the cases on the subject will reveal that most of them are not here in precise point, because few of them were dealing with a statutory mortgage clause and none of them with a clause in the exact words of our statute. The part of our statute here involved reads as follows: "And in case the mortgagor or owner shall neglect to pay any premium due under this policy the mortgagee (or trustee) shall, on demand, pay the same."

Two of the five judges participating in this decision are of the opinion that the obligation upon the mortgagee under said clause is conditional, and that no liability exists against the mortgagee for the payment of the premium until demand is made upon him therefor, and that even then there is no liability on his part unless he then elects to keep the policy in force.

Two others of the judges are of the opinion that the statute creates a covenant between the insurer and the mortgagee—an obligation on the part of the mortgagee— existent from the time the policy is delivered, to pay the premium, in case the owner or mortgagor fails to do so, and that the provision in respect to demand operates as a maturity date, similarly to the maturity date of a note or account payable on demand.

The position of the two judges last mentioned is, in brief, that Wright as a covenantor was bound to pay these premiums. A result of that position is that, as a matter

of law, the insurance company, at the time of the loss, was entitled to retain the one hundred sixty-seven dollars and fifty cents arising from that loss, and to apply it as a credit on the unpaid premium. In this conclusion on this particular point, determinative of this particular case, to-wit, that the insurance company was entitled to retain the said amount, applying it to the unpaid premium—unpaid so far as the mortgagee and the owner are concerned—the writer hereof concurs, and this is stated without entering here upon the reasons which lead the writer to that concurrence. We have already set forth that the agent who has paid the premium, under circumstances such as shown in this case, is subrogated to all the rights of the insurance company in respect to that premium, and may avail of every right in that respect which the insurance company could have asserted or exercised had the premium not been paid to the company. Since then the insurance company could, under the law, have had and retained the money due for the loss, and since the agents here stand in the place and stead of the insurance company with all the rights the company would have had in regard to the premium, it follows that the agents may have the present equivalent of what the company could have had, and in consequence that the agents are entitled to have and recover the money arising from said loss and which has been paid into court as aforesaid. Therefore the judgment of the court below must be reversed, and the cause remanded, with directions to proceed in accordance with this opinion.

Reversed and remanded.

**Anderson, J.**, disqualified, takes no part.

**Ethridge, J.**, delivered a specially concurring opinion.

I concur in the result of the holding in the principal opinion, and I think the rights of the parties are fixed by

section 5185 of the Code of 1930. This mortgage clause provision is one enacted by the Legislature, and is not to be considered as a contract drawn by the insurer, the insured, or the mortgagee. It is to be given a fair and reasonable interpretation, without reference to the usual mortgage clause on the policy under which many of the cases relied upon by the appellee were decided, construing the provisions of the contract most strongly against the insurer. There is no question of the power of the Legislature to enact such a provision as is contained in section 5185 of the Code. In Hardware Dealers Mutual Fire Ins. Co. v. Glidden Co., 284 U. S. 151-160, 52 S. Ct. 69, 70, 76 L. Ed. 214, it was held that a statute requiring the insurer in a fire insurance policy showing a provision fixing the amount of loss by arbitrators whose decision ''is conclusive upon the parties, unless grossly excessive or inadequate, or procured by fraud,'' does not infringe upon the due process clauses of the Fourteenth Amendment. It was also held that: ''The right to make contracts embraced in the concept of liberty guaranteed by the Fourteenth Amendment is not unlimited. Liberty implies only freedom from arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community.''

This power to regulate contracts is broad and comprehensive, and relates to all persons and corporations within reasonable limitations; but the power is more extensive in the case of a public service corporation, or a corporation which is affected by a public interest. German Alliance Ins. Co. v. Hale, 219 U. S. 307, 31 S. Ct. 246, 55 L. Ed. 229; Hancock Mut. Ins. Co. v. Warren, 181 U. S. 73, 21 S. Ct. 535, 45 L. Ed. 755; Orient Ins. Co. v. Daggs, 172 U. S. 557, 19 S. Ct. 281, 43 L. Ed. 552; Dent v. West Virginia, 129 U. S. 114, 9 S. Ct. 231, 32 L. Ed. 623; Noble State Bank v. Haskell, 219 U. S. 104, 31 S. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487; Shallenberger v. First State Bank, 219 U. S.

114, 31 S. Ct. 189, 55 L. Ed. 117.

See, also, cases digested in U. S. Dig. (L. C. P. Co.) "Constitutional Law," sections 276, 401-421, 639-703.

Section 5185 of the Code of 1930, above referred to, reads as follows:

"Each fire insurance policy on buildings taken out by a mortgagor or grantor in a deed of trust shall have attached or shall contain substantially the following mortgagee clause, viz.:

"Loss or damage, if any, under this policy, shall be payable to (here insert name of the party), as ........ mortgagee (or trustee), as ...... interest may appear, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy, and in case the mortgagor or owner shall neglect to pay any premium due under this policy the mortgagee (or trustee) shall, on demand, pay the same; provided, also that the mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee), and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void. This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease and this company shall have the right on like notice to cancel this agreement. In case of any other

insurance upon the within described property this company shall not be liable under this policy for a greater proportion of any loss or damage sustained than the sum hereby insured bears to the whole amount of insurance on said property, issued to or held by any party or parties having an insurable interest therein, whether as owner, mortgagee or otherwise. Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all security held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of ........ claim. Provided, nothing in the foregoing prescribed form shall be construed to in any manner modify the provisions of section 5183.''

In Bacot v. Phoenix Ins. Co., 96 Miss. 223, 50 So. 729, 25 L. R. A. (N. S.) 1226, Ann. Cas. 1912B, 262, it was held that the mortgage clause above set out has the effect of making an independent contract in favor of the mortgagee, and that this contract is not impaired by any act or neglect of the mortgagor in reference to the insurance, and that although the policy might be void as to the mortgagor on account of misrepresentation of his interest in the property, it was valid as to the mortgagee; that the statute automatically writes itself into every contract where the insurance company allows a mortgage clause to be inserted, and makes an independent contract between the mortgagee and the insurance company, in no way dependent upon the original policy between the owner and

the insurer. This ruling has frequently been followed in this state. Scottish Union & Nat. Ins. Co. v. Warren Gee Lbr. Co., 118 Miss. 740, 80 So. 9; Refuge Cotton Oil Co. v. Twin City Fire Ins. Co., 152 Miss. 522, 120 So. 214.

In other words, the statute writes the terms of the contract in this respect into every fire insurance policy on buildings taken out by a mortgagor or grantor in a deed of trust. The statute is more than a mere contract; it announces a public policy, as well as provides the terms of a contract in regard to the mortgage clause, in every deed of trust or mortgage taken out on buildings in this state. The purpose of the statute is wholesome, and tends to preserve the property of the state. It removes the temptation to get insurance upon property greater than the interest of the owner of the property insured; and it also tends to prevent having insurance on the same property in separate policies, payable to separate persons, having separate interests in the property. The statute is highly favorable to the mortgagee. It makes his insurance on the mortgaged property valid, regardless of the neglect of the mortgagor or owner, or by change of ownership or foreclosure proceedings, or by occupation of the premises for purposes more hazardous than are permitted by the policy. The mortgagee is not put to the trouble or risk of seeing that the mortgagor or owner has truly stated the facts, and has kept up the premiums, or has continued as the owner of the property. As a compensation for this benefit, highly advantageous to the mortgagee, the statute has imposed on the mortgagee the duty of paying the premiums if the mortgagor shall not pay them, on a demand for such payment by the insurance company, or those who stand in its right. It also imposes upon the mortgagee, or trustee, the duty to notify the company of any change of ownership or occupancy, or increased hazard, which shall come to the knowledge of the mortgagee or trustee, where the risk is not authorized by the terms of the policy, and the

mortgagee or trustee, on demand, shall pay increased premiums for such increased hazard, if any, involved in the change of ownership, or change of conditions affecting the risk. Under the statute, every person taking a mortgage on the character of property covered by the statute, takes it subject to the terms of the statute; he takes the benefit with the burdens, as a part of his right to such security, and if the policy is issued, his right or interest in the property will be protected by the statute.

In the case before us it is not necessary that the deed of trust held by Wright should have contained a requirement that the mortgagee procure insurance to protect his interest. Such provisions are very common, and are usually employed in deeds of trust on lands or buildings. In the present case the policies were placed with the appellee, and he knew, of course, or was bound to know at his peril, the terms of the statute; having the policies in his possession, it was his own fault if he did not know of the mortgage clause, or if he did not know of the statute automatically writing the mortgage clause into the policy. He took and kept the policies without inquiring as to whether the premiums had been paid; and is now attempting to secure the benefit of the statute, without taking with the benefit, the burden imposed thereby upon him. This he clearly cannot do. Whenever a mortgagee takes a mortgage on a building, knowing that there is an insurance policy in favor of the owner or mortgagor, he is bound to take steps to see that the owner pays the insurance, or that the policies are canceled, if he desires to escape the burdens imposed by the statute. It would be wholly unfair to permit him to accept a part of the statute which gives him a right, and, at the same time, to repudiate the statutory obligations imposed upon him by that statute.

I think our statute requires a different rule of construction to be applied in construing the insurance policy than was held in the authorities relied upon by the appellee,

while the majority of the cases that construe the mortgage clause contain the word "provided," in the New York standard policy mortgage clause. Coykendall v. Blackmer, 161 App. Div. 11, 146 N. Y. S. 631; Home Ins. Co. v. Union Trust Co., 40 R. I. 367, 100 A. 1010, L. R. A. 1917F, 375; Trust Co. of St. Louis County v. Ins. Co., 201 Mo. App. 223, 210 S. W. 98; Ormsby v. Phoenix Ins. Co., 5 S. D. 72, 58 N. W. 301; Johnson, Sansom & Co. v. Fort Worth State Bank (Tex. Civ. App.), 244 S. W. 657; Nat. Fire Ins. Co. v. Emerson, 22 B. C. 349.

These cases interpret the terms against the insurance companies, on the theory that the companies wrote them, and that the terms were ambiguous; and that the ambiguities would be construed against the insurer, and in favor of the insured. These cases, most of them at least, also hold that the contract in favor of the mortgagee is separable, and independent of that of the mortgagor or owner. Just how they can arrive at a conclusion that the mortgagee can accept the benefit of the insurance given him by the clause, without also assuming the burdens imposed thereby, is not clear to my mind. In considering the decisions of other states, this court should not regard them as binding, but merely as persuasive; they are only entitled to the respect that their reasoning commands. None of these cases seems to plant itself upon a statute. It seems to me that the ambiguities referred to by these courts are rather farfetched and involved; and that they created ambiguities by construction, and then construed the policies against the insurers. To my mind, the sounder decisions, supported by better legal reasoning, are the following, which hold to the contrary: St. Paul F. & M. Ins. Co. v. Upton, 2 N. D. 229, 50 N. W. 702; and Boston Safe Deposit & Trust Co. v. Thomas, 59 Kan. 470, 53 P. 472. We should not follow a line of cases merely because more states decided one way than another; but we should carefully consider the reasoning and arguments in support of the conclusions reached, and accept

or reject them, according to their soundness in legal reasoning.

The appellee in this case is seeking the benefit of the insurance on losses sustained on some of the policies held by him, while repudiating the burden put upon him by the statutory mortgage clause. In my opinion, the obligation of the mortgagee to pay the premiums if the mortgagor fails to do so exists from the issuance of the insurance policies. They are payable on demand; in other words, no suit can be brought until demand is first made, and opportunity to pay the premiums, or to cause the mortgagor to pay them, is given the mortgagee; and where a policy is allowed to continue in force, the mortgagee must pay the earned premiums up to the time of demand, when the demand is made, although he may desire to cancel them as to the future.

**Smith, C. J.,** delivered a dissenting opinion.

This case originated in a county court, and a judgment there rendered for Wright, as set forth in the main opinion, was affirmed on appeal to the circuit court.

Under section 5185, Code of 1930, a fire insurance policy on mortgaged property covers the mortgagee's interest therein, though the premium on the policy has not been paid, and obligates the insurer to indemnify the mortgagee to the extent of his interest in the property against any loss or damage occurring thereto within the terms of the policy. Where, as here, the policy was issued at the instance of the owner of the property, the mortgagee is under no obligation to pay the premium thereon, and the only right the insurer has against the mortgagee is to cancel the policy in event the owner fails, and the mortgagee declines, to pay the premium, when requested so to do. The forbearance to collect the premium, in the absence of an agreement by the mortgagee to the contrary, is, by virtue of the above-mentioned statute, ex-

tended by the insurer to the owner and not to the mort-gagee; and the owner alone is indebted to the insurer, or, as here, to the insurer's agent therefor. The appellants, therefore, have no claim against the mortgagee for re-imbursement for the premium paid by them on the policy. The judgment of the court below should be affirmed.

I am requested by Justice COOK to say that he concurs in this opinion.