## FARNSWORTH v. RIVERTON WYOMING REFINING CO.*

(No. 1252; September 28, 1926; 249 Pac. 555, 47 A. L. R. 1114.)

INSURANCE—MORTGAGE CLAUSE IN POLICY—ACTION AGAINST MORTGAGEE TO RECOVER PREMIUM.

> Where mortgagor agreed to maintain fire insurance on mortgaged property for benefit of mortgagee and, without notice to mortgagee, took out a policy with clause making loss payable to mortgagee, with a proviso that, if mortgagor should neglect to pay any premium due under the policy, mortgagee should, on demand, pay the same, such proviso was a condition and not a covenant on which insurer's agent could maintain an action against mortgagee to recover premiums advanced to insurer on the policy, which mortgagor had failed to pay.

*See Headnote:   (1) 26 C J p. 113 n. 87, 88.

APPEAL from District Court, Fremont County, ROBERT R. ROSE, Judge.

Action by H. F. Farnsworth against the Riverton Wyoming Refining Company and G. Jos. La Jeunesse. Judgment in favor of the plaintiff as against the Refining Company, but against the plaintiff as against G. Jos. La Jeunesse, and plaintiff appeals.

*O. H. Gibson,* for appellant.

A mortgagee or grantee, in a deed of trust, has an insurable interest in the mortgaged property separate from the mortgagor; 26 C. J. 29. It may be expressed in one policy; 26 C. J. 30. A mortgagee clause has the same effect as if the mortgage ran to the mortgagee direct; Eddy v. London Assurance Corp., 143 N. Y. 311; Smith v. Ins. Co., 26 C. J. 260; Megown v. Ins. Co., (Minn.) 91 A. S. R. 370; Ins. Co. v. Alvord, 61 Fed. Rep. 754. The mortgagee's rights are the same as the insured's; 26 C. J. 439; Ins. Co. v. Walker Co., 24 Wyo. 59. Mortgagee is liable for the premium if mortgagor defaults; Ins. Co. v. Upton, (N. D.) 50 N. W. 702; Trust Co. v. Thomas, (Kan.) 53

Pac. 472; 1 Cooley's Briefs on Ins., 374. Mortgagor is agent of mortgagee for purpose of receiving and accepting the policy; Union Savings v. Ins. Co., 196 Mass. 230. Notice of acceptance is unnecessary; 28 C. J. 903-906.

*Henry S. Sherman, A. H. Maxwell* and *William B. Neeley,* for respondents.

La Jeunesse is not liable for the insurance premium; Ins. Co. v. Upton, 50 N. W. 702, is not in point, nor is the Kansas case of Trust Co. v. Thomas, 53 Pac. 472; ambiguities in a policy are to be construed favorably to insured; Co. v. Telephone Co., 152 Fed. 963; Royal Ins. Co. v. Lumber Co., 24 Wyo. 59, and cases cited. A mortgage clause is merely a condition; Shipley v. Institute, 58 Atl. 200; Brewer v. Rust, 95 Pac. 233; Rich v. Atwater, 16 Conn. 409; Hastings v. Westchester Ins. Co., 75 N. Y. 141; Home Ins. Co. v. Trust Co., (R. I.) 100 Atl. 1010; Ormsby v. Ins. Co., (S. D.) 58 N. W. 300. In order to impose liability on the mortgagee, we must look to the policy; it states that the mortgagee's interest shall not be invalidated by the mortgagor's neglect, provided that the mortgagee shall, on demand, pay the premium; this merely creates a condition, but not an original liability.

POTTER, Chief Justice.

This cause is here on direct appeal from a judgment of the district court in Fremont County disposing of an action instituted by H. F. Farnsworth as plaintiff against the Riverton Wyoming Refining Company, a Corporation, and G. Jos LaJeunesse, Trustee, as defendants, in favor of the plaintiff as against the Refining Company, but against the plaintiff as against the other defendant; and the appeal is by the plaintiff, who complains of that part of the judgment denying relief as against the defendant LaJeunesse.

The nature of the action is described generally in appellant's brief as an action by an insurance agent against a mortgagor and mortgagee to recover premiums upon

insurance upon the mortgaged property; and it is stated also that the appeal is by the agent from a judgment in favor of the mortgagee. In respondent's brief the action is said to have been instituted by the plaintiff, an insurance agent, to recover from the respondents, the Refining Company, mortgagor, and LaJeunesse, mortgagee, the unpaid premiums on five policies of insurance procured by the plaintiff (appellant) on the property of the Refining Company; that judgment was entered against the Refining Company by default, but in favor of LaJeunesse, the mortgagee, upon a trial.

There seems to be no dispute as to the facts in the case. It appears that the Refining Company made and delivered to LaJeunesse, "Trustee," a mortgage on its refining property situated near Riverton, in this state, to secure a loan of $40,000. And it is conceded that, with the exception of describing the mortgagee as "Trustee," the instrument was in statutory form and contained the following provision, which is authorized by Section 4623, Comp. Stat. 1920, providing a short form for real estate mortgages:

"The mortgagor agrees to pay all taxes and assessments on said premises and to keep the buildings thereon insured in a sum not less than $50,000 to be carried during the life of this mortgage in favor of and payable to the mortgagee; and in case the mortgagor shall fail to pay such taxes and assessments, and to keep said premises insured as aforesaid, the mortgagee may insure said buildings and pay said taxes and assessments, and all sums so paid shall be added to and considered as a part of the above indebtedness hereby secured, and shall draw interest at the same rate."

It is also conceded, as the proof also shows, that there was attached to each of the insurance policies a so-called "mortgage clause" reading as follows:

"Loss, if any, payable to G. Jos LaJeunesse, Trustee, as mortgagee (or Trustee) as such interest may appear. This policy as to the interest therein of the said payee, as mortgagee (or trustee) only, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by the commencement of foreclosure proceedings, nor the giving of notice of sale relating to the property, nor by any change in the interest, title or possession of the property, nor by any increase of hazard; PROVIDED that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same; and PROVIDED further that the mortgagee (or trustee) shall notify this company of the commencement of foreclosure proceedings, and of any notice of sale relating to the property, and of any change of ownership or occupancy or increase of hazard which shall come to the notice of said mortgagee (or trustee) and unless permitted by this policy the same shall be noted thereon and the mortgagee (or trustee) shall on demand pay the premium for any increased hazard. And PROVIDED also that upon failure of the insured to render Proof of Loss, such mortgagee (or trustee) shall, as if named in this policy as the insured, but within sixty days after notice of such failure, render Proof of Loss, and shall be subject to the provisions of this policy as to appraisal and the times of payment and of bringing suit.

Failure upon the part of the mortgagee (or trustee) to comply with any of the foregoing obligations shall render the insurance under this policy null and void as to the interest of the mortgagee (or trustee).

This insurance may at any time be cancelled as to said mortgagee (or trustee) interest by giving the mortgagee (or trustee) a ten day's written notice of such cancellation.

In case of any other insurance upon the within described property, this company shall not be liable to said mortgagee (or trustee) under this policy for a greater proportion of any loss or damage of the within described property than the sum hereby insured bears to the whole amount of insurance on said property, payable to, held by, . or consented to by said mortgagee (or trustee).

The payment to said mortgagee (or trustee) of any sum for loss or damage hereunder, if this company shall claim that as to the mortgagor or owner, no liability existed, it shall, to the extent of such payment, be subrogated to the mortgagee's (or trustee's) right of recovery and claim upon the collateral to the mortgage debt, but without impairing the mortgagee's (or trustee's) right to sue; or he may pay the mortgage debt and require an assignment thereof and of the mortgage."

The record contains no allegation or proof that the mortgagee aforesaid was a direct party to the transaction resulting in the issuance of the insurance policies in question, or that they were ever delivered to him or came into his possession, or that he in fact knew of the same prior to the cancellation thereof a short time before the expiration of each of the policies. But it appears from the evidence that the negotiations for the insurance were between the plaintiff, acting as agent for the several insurance companies, and the manager of the Refining Company; and also that the policies were delivered by the plaintiff as agent to the Refining Company; that the several policies were issued during the months of December, 1920, and January, 1921, and it is alleged in the petition that they were so issued and delivered pursuant to the special instance and request of the defendant corporation, and that "the said defendant" (presumably the refining company) agreed to pay plaintiff the full amount of the premiums, but that no part thereof were paid, and that on December 17, 1921 all of the policies were can-

celled for nonpayment of premiums and that before such cancellation the mortgagee was given notice of the intention to cancel them.

It appears further that the plaintiff had accounted to the several insurance companies for the full amount of said unpaid premiums. And among the exhibits in the evidence are copies of letters sent to the defendant mortgagee, each referring to one of the policies so cancelled, and reading as follows, omitting the address, the amounts and the number of the policies and the name of the company:

"On account of the non-payment of the premium we elect to cancel our policy issued to the Riverton-Wyoming Refining Company covering the Buildings and Contents as per general form attached to said policy, and hereby give five days notice thereof, as provided by the terms of said policy. Take notice that on the 22nd day of December, 1921 at twelve o'clock, noon, or if that is not five days from the receipt hereof, then at the termination of five days from its receipt, the said policy will terminate and cease to be in force, and that you are requested to surrender the same to us forthwith."

The fact that the mortgagee had no personal knowledge of the existence of the insurance policies prior to notice of their intended cancellation may not be material in view of the decisive principle in the case, upon which the authorities may be said to be in direct conflict, notwithstanding some distinguishing facts in each of the cases. For they divide upon a principle and, chiefly, upon the question whether the words of the mortgage clause attached to each of the policies, upon which the contention that the mortgagee is liable for the premiums is based, construed in connection with the provisions for insuring the mortgaged property found in the mortgage are to be considered as constituting a covenant or a condition.

The first case in which the question appears to have been decided is St. Paul Marine Ins. Co. v. Upton, 2 N. D. 229, 50 N. W. 702. It was held in that case that the mortgage clause attached to the policy, like that in the case at bar, amounted to a promise of the mortgagee to pay the insurance premium in case of a failure of the mortgagor to pay it. The action was by the Insurance Company against the mortgagee, and it appearing that the insurance policies had been delivered to and accepted by the mortgagee. The court said:

"The defendant is sought to be charged with a liability for the premium due by virtue of a mortgage clause attached to and made a part of the policy. The construction of this clause determines the question of the liability of the defendant, the mortgagee, to whom the policy, with this clause forming a part of it, was delivered, and by whom it was accepted. * * * Does the clause contain an express promise on the part of the defendant, the mortgagee, to pay the premium in case of the default of the mortgagor? It is insisted that it merely prescribes a condition, on his performance of which the mortgagee may entitle himself to the benefit of this clause. But why should this agreement be so construed as to give the mortgagee the option to avail himself of this provision while the insurance company are to have no choice? If this was the intention of the notice, why did not the provision read as follows: 'Provided, that the mortgagee, in case of the default of the mortgagor, shall have paid the premium at the time he claims the benefit of this clause.' This would have left in him an option. But the clause, as it does read, is an absolute engagement to pay the money on the default of the mortgagor—'then, on demand, the mortgagee shall pay the same.' The clause provides that no neglect or act of the mortgagor, nor shall the vacancy of the premises, invalidate the policy. If defendant's con-

tention is sound, this provision would be nugatory, if the mortgagor should pay the premium on time, for it is only in case of the mortgagor's default that the mortgagee can perform this condition of payment, and defendant insists that it is only on performance of said condition by him that he can have any right under the mortgage clause. This construction would destroy its effect in many cases. It would often deprive the mortgagee of any benefit from the provision that he should not be prejudiced by any act or neglect of the mortgagor, nor by reason of the vacancy, etc. of the premises. The maxim, *ut res magis valeat quam pereat,* is a safe guide. The mortgage clause gave the mortgagee immunity from certain forfeitures resulting under the policy from the mortgagor's acts or omissions, and the mortgagee in terms agreed to pay for this immunity the premium in case of the mortgagor's default. This is the clear import of the agreement.''

This decision was followed by a case in Kansas, where. the same conclusion was reached. Boston Safe Deposit and Trust Co. v. Thomas, 59 Kans. 470, 53 Pac. 422, 472. It appeared in that case that the owner of the property had negotiated the loan through the defendant Ball, secured by a trust deed made to Ball as trustee, and the trust deed provided that each insurance policy should be held by the trustee or his successors as collateral or additional security for the payment of the indebtedness, and that they should have the right to collect and receive all moneys which may at any time become payable and receivable thereon, that the mortgagor covenanted to pay the insurance premiums, and it was provided further that if such payments were not made, the party of the second part, or of the third part, the creditor, might pay them, the same then to be a lien upon the premises the same as the principal debt. The suit in that case was by the insurance agent against the owner of the property, the

trustee named in the trust deed, and the trust company which had loaned the money. The judgment was against the owner of the property, and the Trust Company. The latter appealed. The court said:

"Two principal questions are discussed; First, whether the mortgage clause attached to the policy amounted to a contract on the part of the beneficiaries under the trust deed, to pay the premiums in case the mortgagor should fail to pay them, or merely to a condition avoiding the policy; and, second, whether Thomas (the agent) stands in such relation to the insurance contract that he is entitled to sue on it. The first question is not difficult. While the word 'provided' ordinarily indicates that a condition follows, there is no magic in the term, but the clause is to be construed from the words employed and from the purpose of the parties gathered from the whole instrument. These mortgage clauses were furnished to Thomas by Ball to be attached to the policy. The first clause provides for the payment to Ball, as trustee. The second clause provides that the policy shall not be invalidated by any act or neglect of the grantor or owner of the property insured. This included neglect to pay premiums on insurance policies, as well as neglects, which, without such a clause in the policy, would have avoided it. By the terms of the deed of trust, Throop (the owner) covenanted to keep the property insured and to pay the premiums, but provision was also made that, in case of his failure to do so, the trustee or beneficiaries might pay the premiums and tack the amount so paid to the trust deed. In consideration of the provisions against forfeiture, through the neglect of the mortgagor, the creditor agreed that, if the mortgagor or owner failed to pay the premiums, he should pay them on demand. The value of the property mortgaged was mostly in the hotel building covered by the insurance. In case of its destruction by fire,

the bulk of the security would be gone, unless covered by valid insurance. For the safety of the holders of the notes, it was of the utmost importance that the insurance should be kept in force. The provisions quoted in the deed of trust and the insurance policies were to that end, and rendered the beneficiaries liable for the unpaid premiums." Citing Insurance Co. v. Upton, supra.

It appeared in the case that at the time the loan was negotiated, there was an understanding between Throop, the owner, Ball, trustee who negotiated the loan, and Thomas, the insurance agent, that the owner was to take out policies to the amount provided for in the trust deed, and that Thomas was to furnish the policies; also, that the renewals were issued by Thomas and delivered to Ball, the trustee, who furnished the printed mortgage clauses to be attached to the policies, and who, as the court said, "was the agent of the beneficiaries, the trust company furnishing the money." The court said further that whenever policies expired, if renewals were not sent to Ball by Thomas, he or some of the clerks in his office called on Thomas for them. And, further, that before the action was commenced a demand was made of Ball, as the agent of the holder of the notes, for the full amount which he refused to pay. We need not inquire as to the effect of these distinguishing facts, since the decision appears to have been grounded upon the principle that the provision in the mortgage clause for payment of the insurance money to the mortgagee amounted to a contract or covenant on the part of the mortgagee to pay the insurance premiums in case of the failure of the insured property owner and mortgagor to do so.

There are two cases, where the action was the same as in the North Dakota and Kansas cases aforesaid, that is to say, an action for the recovery of premiums, either by the insurance company or the agent thereof, directly op-

posed to the decisions in those cases. In the cases to which we now refer and cite, said mortgage clause provisions are held to constitute a condition only and not a covenant. Coykendall v. Blackmer, 161 App. Div. (N. Y.) 11; 146 N. Y. S. 631; Home Ins. Co. v. Union Trust Co., 40 R. I. 367, 100 Atl. 1010; L. R. A. 1917 F. 375. It was expressly stated in the New York case that the decision depended upon the construction to be given to the New York standard mortgagee clause. The facts were that one George Blackmer became the mortgagee of real property in 1916 under twenty fire insurance policies which, at the request of the owner, who was also the mortgagor of the insured premises, had been issued and delivered to the mortgagee by the insurance agent, the plaintiff in the case. Nine of the policies had been issued in 1907 for the term of three years, and renewed for a like term in 1910, and the other two were for one year each. The action was brought against the executrix of the estate of the mortgagee. None of the policies was procured by the mortgagee or issued at his request but all were mailed to, and received and retained by him, but whether with the knowledge of the contents of the policies and the attached slips did not appear and was said to be, perhaps, not material. No part of the premium was ever paid by the owner, and no demand for payment of any portion was made by the plaintiff upon the mortgagee until in January, 1911. The plaintiff obtained from the insurance companies assignments of moneys due and to become due from, and all causes of action against, the defendant. It appeared also that the defendant filed no exceptions to the findings of fact, but based his appeal solely upon the ground that the conclusions of law were not warranted by the findings. The court said:

"The only question, therefore, before us is whether the plaintiff as a matter of law is entitled to a recovery; that is, whether the clause 'provided that in case the mort-

gagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same,' should be construed as a covenant upon the part of the mortgagee to pay the premium in event of the neglect of the mortgagor to pay the same, or to be construed merely as a condition, which, if not complied with by the mortgagee, would foreclose him of the right to a recovery given him in the preceding portion of the mortgagee clause, notwithstanding the happening of any of the prescribed matters specified therein, which under the conditions of the policy itself would render the policy void. It must be conceded that unless the clause in question constituted a covenant, no recovery can be had in this action. We are of the opinion that the word 'provided' was used in the sense of 'if' or 'on condition' and hence that the clause referred to should be construed as a condition, not as a covenant. * * * It is certain, as is said by Judge Swift, that there is no word more proper to express a condition than this word 'provided' and it shall always be so taken, unless it appears from the context to be the intent of the parties that they shall constitute a covenant. 4 Day. 326. Many authorities in other states might be cited to the same effect. Unquestionably, the mortgagee clause constituted a new agreement between the insurance company and the mortgagee, and was attached to the policy for the purpose of enabling the mortgagor to perform the covenant of insurance contained in the mortgage, and in consideration of the taking of the policy by the mortgagor. It must be interpreted in such manner as to carry out the intention of the parties, and for that purpose the whole clause must be considered. While the mortgagee clause was for the benefit of the mortgagee in the respect before referred to, it was for the benefit of the insurance company in that it required the mortgagee to notify the company of any change of ownership or occupancy or increase of hazard

which should come to his knowledge and to pay the premium for the increased hazard, otherwise the policy should be null and void. It operated to give the insurance company, upon the payment of any sum to the mortgagee upon loss or damage under the policy, the right upon claiming that as to the owner no liability existed, to be subrogated to the extent of such payments to all the rights under the mortgage, or at his option to pay the mortgagee the amount of the mortgage and receive an assignment thereof and to all securities held as collateral to the mortgage debt. The apparent meaning of the mortgagee clause is that the insurance, as to the interest of the mortgagee shall not be invalidated by any act or neglect of the mortgagor, if the mortgagee shall on demand pay any unpaid premium, and hence that if the mortgagee shall on demand neglect or refuse to pay the unpaid premium, he shall no longer be entitled to avail himself of the stipulation that no act or neglect on the part of the mortgagor shall invalidate the policy, but the insurance of the interest of the mortgagee shall thereafter be covered by the policy itself, and this was doubtless the relation of the mortgagee and the insurance companies following the demand of the company for the payment of the premium in January, 1911, and the neglect of the mortgagee to pay the premiums.''

The court then called attention to the North Dakota and Kansas cases aforesaid, to which, as they say, they had been referred by the briefs, and, as to those cases, said:

''In the former case the question arose upon a demurrer to the complaint and the mortgagee took the novel position that the mortgagee clause could not be effective unless the mortgagee had paid the premium, which he could not have had the opportunity of doing in case the mortgagor paid it on time. In the latter case, the agent

of the mortgagee negotiated with the agent of the insurance companies for the insurance, furnished the mortgagee slips, and the mortgage contained a covenant upon the part of the mortgagor to pay the insurance premiums and a provision that if such payments were not made the mortgagee might pay the premiums, and that the amount so paid, with interest at the rate of twelve per cent per annum, should be a lien on the premises. The court apparently considered this clause, providing for the reimbursement of the mortgagee for premiums paid, as important as bearing upon the intention of the parties that the mortgagee clause should be construed as a covenant. The mortgage in the case at bar contained no such provision. While it provided that the mortgagor would keep the buildings insured against loss by fire for the benefit of the mortgagee, the construction required by the statute to be given to said condition was that in the event of the default of the mortgagor to keep the buildings insured and the policies delivered to the mortgagee, the mortgagee might make the insurance, pay the premiums, and add the amount so paid with interest to the mortgage debt. The policies in question were never cancelled, and in case they had been, the mortgagee, by the terms of the mortgage clause, had ten days after notice of cancellation in which to procure other insurance, and there was no time during the six years period of their existence that the buildings were not kept insured by the mortgagor and the policies in the possession of the mortgagee, and hence the mortgagee was not at any time authorized to pay the premiums and tack the sum so paid to the mortgage debt. Evidently the plaintiffs relied upon the mortgagor for payment, as it was nearly four years after the issuance of the first policy, and one year after the expiration of eleven of the policies, before the plaintiff made demand upon the mortgagee for payment of premiums, and so far as appears such demand was the first notice which the mort-

gagee had that the premiums had not been paid by the mortgagor. The plaintiff had the power to protect himself against loss by reason of the non-payment of premiums by the mortgagor by canceling the policies, which one of the conditions thereof gave him the right to do after five days notice.''

The New York court thereupon cited, as opposed to the cases from North Dakota and Kansas, the decision in Ormsby v. Phenex Ins. Co., 5 S. D. 72, 58 N. W. 301, holding that such mortgagee clause constituted a condition and not a covenant, and then added the following comment respecting a part of the mortgagee clause, which, it will be remembered, had become known as the New York standard mortgagee clause:

''The provision that no act or neglect of the mortgagor shall invalidate the insurance as to the interest of the mortgagee is not in any way dependent for consideration or validity upon the provision that the mortgagee shall upon default of the mortgagor pay the unpaid premiums, as it was held prior to the insertion in the mortgagee clause of the latter provision that the former was valid and enforceable. Hastings v. Westchester Fire Ins. Co., 73 N. Y. 141. Subsequent to the time of this decision, the latter provision was inserted. Had the intention been that the provision should be construed as a covenant rather than as a condition, a slight modification thereof or the addition of the words 'which the mortgagee hereby covenants to do,' would naturally have been inserted and thereby all ambiguity removed.''

The lien holder in the Rhode Island case was trustee under a deed of trust; and after demand of the trustee for payment of the premium upon the failure of the insured property owner to do so, the policy was cancelled as had been threatened when the request of the Trust Company

for payment of the premium had been made. The questions at issue were described by the court in its opinion as follows:  1.  Did the defendant promise to pay the premium on demand in case the mortgagor should neglect to pay it?  2.  If the defendant did so promise, did the delay on the part of the insurance company in making demand for payment of premiums·release the defendant from liability under its promise?  It was found unnecessary to determine the second question.  The court said, in disposing of the case upon the first question:

"When the plaintiff issued these policies, by reason of the attachment of the riders thereto, it entered into two separate and independent contracts of indemnity relating to the same subject, but applying to different interests therein; (1) A contract with the owner subject to certain conditions appropriate to the relation of owner and insurer; (2) a contract between the insurer and the mortgagee only, becoming effectual when the owner failed to pay premiums or violated the conditions of the policy, and concerning which the relation of the original insured to the property, or his acts or neglect, are of no account. When the first contract failed, or if it never attached, this second contract began and proceeded·subject to its own conditions and limitations.  See Smith v. Union Ins. Co., 25 R. I. 260, 55 A. 715, 105 Am. St. Rep. 882.  The plaintiff claims that the words in the mortgage clause, 'provided that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same' imported a contract by the mortgagee to pay the premium if the mortgagor does not pay it.  The defendant claims that this clause should be construed as a condition, and not as an agreement.  *  *  *  The word 'provided' in instruments of this character in general has a well-settled legal meaning, and, construed in its natural and primary sense, imports a condition and not an agreement.  In

Bouvier's Law Dictionary, the following definition is given: 'A promise always implies a condition unless subsequent words change it to a covenant.' In Rich v. Atwater, 16 Conn. 409, at page 419, the court says: 'The proviso, it is said, requires such a construction. There has been much nice discussion upon the word 'provided.' (citing cases.) There is nothing in the context of this instrument which requires a construction of this clause as a covenant. The parties have used the technical word 'provided,' to which the courts in numerous cases have applied a certain well-known construction. The mortgagee clause in question is in the standard form, and presumably was carefully worded by experienced lawyers, who were familiar with the customary legal construction of the word. Had the intention been that the word 'provided' as used in this clause should not be given its primary legal meaning and effect, but that the clause should be construed as a covenant rather than a condition, any possible ambiguity could easily have been removed by the addition of a few words such as 'and it is agreed' or any similar phrase. In Hastings v. Westchester Ins. Co., 73 N. Y. 141, decided in 1848, the mortgagee clause in the policy of fire insurance on which suit was brought contained the following words: 'It is also provided and agreed.' The omission of such specific words of agreement in later policies, such as the one now in question, is of some significance. It is admitted by the plaintiff in its reply brief that the second clause in the rider, to-wit, 'provided also that the mortgagee shall notify this company of any change of ownership or occupancy,' etc. is a strict technical condition subsequent. It is argued that the fact that the words 'otherwise this policy shall be null and void' is found only at the end of this proviso, and that it is separated from the rest of the clause only by a semi-colon, and that the preceding proviso ends with a period, indicates that the words quoted above are in-

tended to qualify the second proviso only, and not the first, and that the second proviso is independent of the first and is of a different nature. The effect of this argument is much weakened by the fact that the second proviso, which is of the same general character as the first, follows it immediately, and is connected with it by the words 'provided also.' We think that both clauses are subsidiary to the main part of the mortgagee clause, and that the words 'otherwise the policy shall be null and void' are applicable to, and should be read with, both provisos; so read its effect clearly makes both clauses conditions subsequent. Under this construction of the two provisos, the effect of the mortgage clause as a whole would be as follows: It would, as stated in the case of Smith v. Union Ins. Co., supra, constitute a separate contract between the insurance company and the mortgagee, entered into at the same time as the contract between the insurance company and the mortgagor, and based upon the same consideration. While it would come into existence as soon as the policy was delivered, it would not become active until some default, by nonpayment of the premium or otherwise, had been made by the mortgagor. Then it would come into full force and effect, and would give the mortgagee an independent right against the insurance company, which would, however, be subject to certain conditions subsequent. One of these would be that, if any part of the premium remained unpaid, the mortgagee would have to pay it upon demand or it would lose its rights under its independent contract, and would be under no obligation to pay the unpaid premium if it preferred to let the policy lapse. This construction protects fairly the interest of the insurance company and the mortgagee. The insurance company is entitled to the payment of the premium on the delivery of the policy, and consequently has the power to protect itself fully, without recourse to the mortgagee. It is in a position at all times, with full

knowledge of the facts in regard to the payment of the premiums, to call for payment from the mortgagor, and, if advisable, can cancel the policy by giving the prescribed notice. On the other hand, the mortgagee in many cases has no means of knowing whether the premium has been paid, and as the insurance company must first make demand on the mortgagee for payment before the rights of the mortgagee can be affected by the failure of the mortgagor to pay, it would impose an unreasonable burden on the mortgagee to require it to keep constant watch on the condition of the account between the insurance company and the mortgagor in order to protect itself from liability for unpaid premiums. * * * The following cases support the contention that the clause in question imports an agreement: Boston Safe Deposit & Trust Co. v. Thomas, 59 Kans. 470, 53 Pac. 472; St. Paul F. & M. Ins. Co. v. Upton, 2 N. D. 229, 50 N. W. 702. Opposed to these cases are the cases of Ormsby v. Phenex Ins. Co., 5 S. D. 72, 58 N. W. 301, and Coykendall v. Blackmer, 161 App. Div. 11, 146 N. Y. Supp. 631, which hold that the clause in question is a condition, and not a covenant. The case of Coykendall v. Blackmer is a recent case, decided in 1914, in which the court carefully considered the cases'' from South Dakota and Kansas. ''We agree with the decision in the Coykendall case, supra, that the provision in question should be construed as a condition rather than a covenant.''

The South Dakota case of Ormsby v. Ins. Co., cited in the Rhode Island case, was an action upon a policy of insurance and was defended upon the ground that a second mortgage had been given upon the property of which no notice was given the insurance company; that it had been foreclosed and the property purchased by another party of which no notice was given to the defendant; that the property had been conveyed to still another party, of which transfer no notice had been given to defendant;

and that the possession of the property had been changed, and at the time of the loss was in possession of a descendant of one of the transferees but without notice of any change of possession to the defendant company. Also that the plaintiff had full notice and knowledge of the second mortgage and the alleged change of possession. The court said that the decision of the question thus presented was to be determined upon a construction to be placed upon the mortgage clause, "as to what extent the plaintiff was bound by the stipulation in the policy itself, and the effect as to the plaintiff of a violation of this stipulation by the owner and mortgagor,"—and whether or not there was sufficient evidence to submit to the jury that the knowledge of certain of the parties could be imputed to another party involved in the cause. The court concluded a discussion of the matter by saying that the term "provided" as used in said mortgage clause must be construed as a condition, that being clearly the intention of the parties; that nothing appeared in the subsequent language of the agreement indicating that said term was intended as a covenant, and that therefore the clause in the mortgage that the insurance as to the interest of the mortgagee could not be invalidated by any act or neglect of the mortgagor or owner of the property ceased to be operative whenever there was a change of ownership or an increase of hazard that came to the knowledge of the mortgagee and he failed or neglected to give notice thereof to the insurer and his permission for such change of ownership or increase of hazard endorsed upon the policy."

A comparatively recent decision in Missouri, disposing of two cases in one opinion, is in line with and supports the conclusions in the New York and Rhode Island cases aforesaid, that the provisions aforesaid in the mortgage clause are to be construed as creating a condition and not a covenant. But the cases were not brought to recover

premiums. Each was brought by the mortgagee or lien holder against the insurance company upon the insurance policy. Trust Co. v. Phoenix Ins. Co; Same v. German-American Ins. Co., 201 Mo. App. 223, 210 S. W. 98.

In each of these cases the court was called upon to consider the effect of the failure of the mortgagee to give notice to the insurance company of the fact that the insured had sold the property to another. And it was held that the provision in the mortgage clause that the interest of the mortgagee or trustee shall not be invalidated by any act or neglect of the mortgagor or owner ceased to be operative whenever a change of ownership becomes known to the mortgagee or trustee and he fails or neglects to notify the insurer thereof as provided in the policy. The ground of the decision, after discussing the question and citing authorities, was stated by the court as follows:

"As we read each of the clauses which follow the word 'provided,' its meaning is readily apparent, and we find no ambiguity therein, nor does the language used indicate that the proviso is intended as a covenant. * * * The clause in question can only be construed as meaning that the insurer has only agreed to suspend the terms of the policy itself as to the mortgagee's or trustee's interest not to be affected by any act or neglect of the mortgagor or owner, only so long as the said mortgagee or trustee shall comply with the conditions named, among them being the condition requiring the mortgagee or trustee to notify the insurer of any change of ownership in the property that comes to their knowledge. It must follow that when, as in the cases at bar, the plaintiff, if it had knowledge of the change of the ownership of the property, failed or neglected to notify the insurers of such change, that the mortgage clause agreement cannot be held to be in force and effect from and after the time the plaintiff had knowledge of such change of ownership and failed or neglected to notify the insurer thereof. In other

words, we hold that the failure on the part of plaintiff to comply with the condition in the mortgage clause suspends the operation of the same and leaves in force and effect the provisions of the policy as to the acts on the part of the owner or mortgagor which will operate to forfeit the policy.''

It has been held also in Canada that where an insurance company took a note from the insured for the premium, and upon the note not being paid at maturity, the insurance company cancelled the policy and sued the mortgagee for the earned premium, that as there was no privity of contract between the insurance company and the mortgagee, the latter could not be held liable for the premium. National Fire Insurance Co. v. Emerson, 22 British Columbia Law Reports, 349. While it does not clearly appear that the case was decided upon the provisions of a mortgage clause or that any such clause was attached to the policy, it is shown in the report of the case that it was contended by the insurance company that the policy was made payable and given to the mortgagee who held it; but that the latter had never undertaken to pay the premium, and that there was no privity between him and the insurance company. Also that it was contended for the mortgagee that the latter had conceived the idea of getting a policy himself, whereupon the old policy was cancelled and a new one made out payable to said mortgagee and dated back to the date of the cancelled policy, and that the change was engineered by the managing director of the insured company, who, it was contended, made the change at the instance of the mortgagee and as his agent. But it was held, as above stated, that the mortgagee had simply insisted upon what he had a right to under his covenant in the mortgage, that the mortgagor take out a policy, not as the agent of the mortgagee, but on his own account as mortgagor; and that the

insurance company must have understood what was being done. One of the justices added to what had been said by others:

"If it had been that Windsor (the manager of the insured) was Emerson's agent, to go out and place insurance, and, being that agent, obtained a policy containing a clause such as we have before us, and that when Emerson was handed that policy he put it in his safe without reading it, then I think he would be indebted to the company. There was no such agency, and there was no privity of contract, because privity of contract would have to be established through agency."

The question before us was also considered by the writer of the opinion in the case of Johnson, Sansom & Co. v. Ft. Worth State Bank, decided by the court of civil appeals of Texas in June, 1922, and reported in 244 S. W. 657. And the opinion of that justice seems to have been that the provision aforesaid of the mortgage clause created merely a condition. But the case was decided by the majority of the court upon the point that the insurance agents who had voluntarily paid the premiums had no right of recovery therefor against said mortgagee; said majority of the court concurring in the conclusion that the judgment of the trial court should be affirmed, upon the ground that there was no contract on the part of the mortgagee with the plaintiffs, and that the payment of the insurance premiums by appellants to the insurance company was purely voluntary, without any right of subrogation to any original right of the insurance company to demand such payments by the lien holder, and that after acceptance of such payment from the agents the insurance company had no right to cancel the policy by reason of the fact that the payments had not been made by the mortgagee or trustee. And, reaching that conclusion, it was declared that the majority of the court deemed

it unnecessary to determine the merits of other questions discussed in the opinion delivered in the case.

We are urged by counsel for the mortgagee, the appellant in this case, to adopt the conclusions announced in the South Dakota and Kansas cases, on the ground, first, that the reasoning of the courts in the New York and Rhode Island cases above referred to is "highly artificial and unsatisfactory" and that those cases are distinguishable from the South Dakota and Kansas cases, as well as from the one at bar, by reason of the fact that the mortgage clause provided that the mortgagee might pay the insurance premium and tack it to the mortgage indebtedness, and that in the New York case that distinction is pointed out as material. But counsel overlooks the fact, stated in Coykendall v. Blackmer, that there was a statute in New York substantially to the same effect as the provision in the mortgage involved in this case; said statute providing that the provision of the mortgage that the mortgagor would keep the buildings on the premises insured for the benefit of the mortgagee be so construed that in the event of the default of the mortgagor to keep the buildings insured and the policies delivered to the mortgagee, the mortgagee might make the insurance, pay the premiums, and add the amount so paid with interest to the mortgage debt. After carefully considering the various decisions upon the subject, and the principles that must be taken into consideration in arriving at a construction of the mortgage clause in connection with the provision of the mortgage for the insurance for the benefit of the mortgagee, we are satisfied that the New York and Rhode Island cases aforesaid, Coykendall v. Blackmer and Home Ins. Co. v. Union Trust Co., supra, state the true rule; and that, as determined in these cases and the other cases above cited supporting the same principle, the provisions of the mortgage clause aforesaid amount to a condition merely, and do not describe nor create a covenant.

And that we believe to be the rule best sustained by the authorities.

It will be necessary, therefore, to affirm the judgment, and it will be so ordered.

*Affirmed.*

BLUME and KIMBALL, JJ., concur.