METROPOLITAN LIFE INS. CO. *v.* GEORGE H. OLMSTED CO.

(Decided October 3, 1927.)

*Messrs. Cook, McGowan, Foote, Bushnell & Burgess,* for plaintiff in error.

*Messrs. Davis, Young & Vrooman,* for defendant in error.

VICKERY, J.  This action comes to this court on a petition in error to reverse a judgment of some

$3,000 rendered against the plaintiff in error in the court below.

From the briefs and arguments of counsel and the statement of facts in the case, we learn that the George H. Olmsted Company, plaintiff below, is an insurance agency, either incorporated under the laws of the state of Ohio, or a partnership, carrying on business as a solicitor of fire insurance for various insurance companies throughout the world.

We learn from the statement of facts and from the arguments of counsel that the Olmsted Company occupied the position of *del credere* agent; that is, it solicited fire insurance from its customers and the public generally, and then placed the insurance with various insurance companies which it represented throughout the world, writing the policy and having the policy delivered to it, and delivering the policy to its customer, the insured, and collecting the premium itself, or giving credit to the insured, as was its custom; that, under the terms of its contract with the various companies it represented, it remitted the premiums that were due from time to time to the insurance company that carried the risk, and that whatever amount was due from the insured was due to and collectible by the Olmsted Company.

Prior to the transactions complained of in the suit below, the Olmsted Company had written the insurance upon the Winton Hotel property and had placed that insurance in certain insurance companies that it was agent for. At the time this insurance was written, the Metropolitan Life Insurance Company of New York had a mortgage upon the Winton Hotel property of something over a million dollars, and, by arrangements between the mortgagor and

the mortgagee, it was agreed that the insurance policies should contain a clause payable to the Metropolitan Life Insurance Company, as its interest might appear, which was the ordinary standard insurance mortgagee clause.

Under and in pursuance of this arrangement between the mortgagor and the mortgagee, the policies were deposited as is customary with the Metropolitan Life Insurance Company. It appears from the statement of facts that there was no indorsement upon these policies that the premium had been paid, but, as a matter of fact, prior to the commencement of this action and prior to the happening of the events which led up to this cause of action, the Olmsted Company, pursuant to its contract with the various insurance companies that it represented, had made a settlement and had paid the premium for this insurance.

It seems that the Winton Hotel Company was operated by the Winton Olmsted Company, and the operator was obligated to pay the premium of insurance, and I believe the record shows that it was this operating company that secured the George H. Olmsted Company, the insurance agency, to write this insurance.

It might be said in passing that Howard Olmsted was a member of both the George H. Olmsted Company and the Winton Olmstead Operating Company. The number of shares that he owned in the operating company does not appear in the record. This may be of no importance, and it may be of much importance.

The policy of insurance contained this clause:
"N. Y. Standard Mortgage Clause.

"Loss, or damage, if any, under this policy shall be payable to —— as mortgagee (or trustee), as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall on demand pay the same.

"Provided also that the mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

"This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this company shall have the right, on like notice, to cancel this agreement.

"Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this

policy and shall claim that as to the mortgagor or owner, no liability therefor existed, this company shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of claim.

"Attached to policy No. —— of the —— Insurance Co. ————, Agent."

The policies in question, as already stated, were delivered to the Metropolitan Life Insurance Company under and by virtue of this clause. It seems from this record that the Winton Olmsted Company failed and neglected to pay the premiums upon these policies to the George H. Olmsted Company, and that condition existed for nearly a year after the policies had been delivered to the Metropolitan Life Insurance Company. In the meantime the Winton Olmsted Company became a bankrupt and failed to pay this obligation, and so a notice was served upon the Metropolitan Company, after these premiums had remained unpaid without any knowledge upon its part, so far as it appears, for nearly a year, when Howard Olmsted, who was a member of both the Winton Olmsted Company and the George H. Olmsted Company, notified the Metropolitan Life Insurance Company that the premiums had not been paid and demanded payment therefor. Within a

very short time thereafter, the Metropolitan Company refused to pay these premiums, and returned the policies that they held in their possession, with the direction that, so far· as they were concerned, they might be canceled, and, I presume, they secured insurance elsewhere. The premiums of the Olmsted Company not having been paid by the Winton Olmsted Company, a suit was not brought against the person who was to pay this insurance which was held as additional security by the Metropolitan Life Insurance Company, but a suit was brought against the Metropolitan Life Insurance Company to recover the amount of the premiums. Upon a hearing in the common pleas court, a jury was waived, and the case was submitted to the court upon an agreed statement of the facts, and, after due consideration, the common pleas court rendered a judgment in favor of the George H. Olmsted Company against the Metropolitan Life Insurance Company for a sum around $3,000. A motion for a new trial was filed, which was overruled, and judgment entered, and it is to reverse that judgment that error is prosecuted here.

Two questions are raised in this court, and each is urged as a reason why the judgment of the court below was wrong and should be reversed. I shall take them up in their order.

First, there is an objection to the suit being maintained by the George H. Olmsted Company; it being alleged that it as an agent cannot maintain a suit, as there was no allegation that the right to these premiums had been assigned to it; nor was it subrogated; nor was there any claim of subrogation; and it was therefore urged that it cannot maintain

this suit; and that the judgment should be reversed on this ground.

It will not be necessary to dwell long upon this proposition. In other cases similar to this, we have held that an insurance agency such as the George H. Olmsted Company is an entity, and makes contracts in its own name, and can maintain suits in its own name. It is true it represents, in a measure, various fire insurance companies as principals, but it stands in the position of a *del credere* agent. The contract was made by it, in its own behalf, and the insurance company never deals directly with the insured, but always gets its pay from the Olmsted Company. We think, therefore, that the suit could be maintained by the George H. Olmsted Company. We will not cite cases to sustain this proposition, but we think the matter is clear, and we have no hesitancy in overruling this first contention of the plaintiff in error.

The second question, however, is more difficult, and that is, that this contract of insurance, wherein the policy said that the mortgagee shall, upon demand, pay, etc., constitutes a *covenant* between the Metropolitan Life Insurance Company and the Olmsted Company, the insurance agency, and therefore, upon a demand made, they were under obligation to pay this, and, the demand having been made, as it is claimed, the obligation at once arose.

The court apparently took the view that this created a *covenant* between these parties, rather than a *condition,* and the proper solution of that question will determine the proper solution of this lawsuit.

The case has been ably argued before this court, and many cases have been cited. There seems to

be a sharp conflict of authority. There are two cases at least, one in North Dakota, decided in 1891, and another in Kansas, decided in 1898, which support the contention that the plaintiff below, the defendant in error here, makes: that is, that this clause in the insurance policy constituted a covenant, and, upon demand being made, the mortgagee became liable to an action at law for the recovery of the premiums by the insurance company. *St. Paul Fire & Marine Ins. Co.* v. *Upton,* 2 N. D., 229, 50 N. W., 702; *Boston Safe Deposit & Tr. Co.* v. *Thomas,* 59 Kan., 470, 53 P., 472.

The contention that this clause was a covenant between the parties, as already said, was sustained by these two decisions, and it seems that Joyce on Insurance and Cooley on Insurance take the same view, but it appears that the writers of these volumes base their opinion entirely upon the two decisions quoted above. If these authorities should be held to be the law, then the judgment of the court below was right, and it should be affirmed.

I have already said that there is a sharp conflict of authority. The contention of the plaintiff in error as to this clause is that it was a *condition,* that the words, ''upon demand shall pay,'' etc., constitute a recitation of a condition which will enable the mortgagee to keep and perfect its securities in so far as the fire insurance is concerned, but that they impose no *obligation* upon it and that it may likewise refuse to pay and permit the policies to be canceled by the insurance company.

This contention is urged as the true rule to be applied in the instant case, and it is supported by the case of *Coykendall* v. *Blackmer* (1914), 161 App.

Div., 11, 146 N. Y. S., 631, where the question was squarely before the court.

It is true that the policy differed somewhat from the policies in the Kansas and North Dakota cases, but the court calls attention to the statutes in New York, which, if taken in connection with the policy, would put the New York case on exactly the same basis in this respect with the North Dakota and Kansas cases, and then the New York court decided positively that it was a condition and not a covenant.

Our attention has been called likewise to what has been denominated by counsel a dissenting opinion in the New York case, which seems rather to be a concurring opinion; that is, the so-called dissenting judge concurred in the judgment, but dissented from the view of the New York court in holding that this clause was a condition rather than a covenant, but, inasmuch as the demand upon the mortgagee had not been made until nearly or quite a year after the policies had been written, the demand was not made seasonably enough to make it a covenant, and therefore he was constrained to agree with the majority of the court in their judgment.

This question again came before the court of Rhode Island in the case of *Home Ins. Co.* v. *Union Trust Co.,* 40 R. I., 367, 100 A., 1010, L. R. A., 1917F., 375, where exactly the same question was involved, and the Supreme Court of Rhode Island, in a well-considered case, followed the decision of the New York Court of Appeals, and held that the clause was a condition and not a covenant.

The question also came before the District Court of Appeals of California in the case of *Schmitt* v. *Gripton,* 77 Cal. App., 429, 247 P., 505, decided April

14, 1926, where the court again decided that the clause in the insurance policy under discussion was a condition and not a covenant.

The question arose incidentally in a South Dakota case, to wit, *Ormsby* v. *Phenix Ins. Co.,* 5 S. D., 72, 58 N. W., 301, where the same question was raised and decided in the same way.

One of the latest cases is a Texas case, namely, the case of *Johnson, Sansom & Co.* v. *Fort Worth State Bank,* 244 S. W., 657, where the Court of Civil Appeals decided both questions that are involved in this lawsuit, holding that an agent could not sue without alleging subrogation, which, as already stated, we do not consider tenable in this case; the second question involved in the instant case the Texas court decided exactly the same as the New York, Rhode Island, California, and South Dakota courts decided, all to the effect that this clause was a condition and not a covenant.

The latest case of all, however, is that of *Farnsworth* v. *Riverton Wyoming Refining Co.,* September 28, 1926, 35 Wyo., 334, 249 P., 555, 47 A. L. R., 1114, where the same question is involved, and the Supreme Court of Wyoming holds that the clause under discussion is a condition and not a covenant.

There may be other cases, but, if so, they have not been called to our attention, and these authorities, which it will be noted are much later than either the North Dakota or Kansas case, all in effect hold that the contention claimed for the plaintiff in error, to wit, that this clause was a condition and not a covenant, prevails, so, in so far as authority is concerned, the weight is clearly in favor of the contention of

plaintiff in error that this is a condition and not a covenant.

But, aside from the authorities, and I believe the question has never been before a reviewing court in this state, we are left to blaze the way and set a precedent of our own. Is it necessary to rely upon authority to sustain the contention of the plaintiff in error? Manifestly the mortgagor is responsible. It is true that the insurance is for the benefit, not only of the mortgagor, but for the mortgagee also. Then upon what theory could the insurance company, who has made a contract with the mortgagor, bring an action against the mortgagee? The mortgagee may not desire to carry this insurance. He may be willing to have the insurance canceled. He may have arrangements whereby he can get insurance from some companies that he stands in closer relations with, or for many reasons, or for no reasons at all, he may not care to obligate himself by paying these premiums. Surely he can elect not to do so, and what is the penalty in case he does so? Why, in case the mortgagee or mortgagor, or neither of them pay, the insurance company would have the right to cancel the insurance. The clause in the policy in question in the instant case provides that, if there is a failure to pay the premiums, the policy may become void, but the words are "shall pay." What do they mean? They mean that, where the mortgagor refuses or neglects to pay, the mortgagee, upon notice, if it wants the policy to remain in force, shall pay, and it will be noticed that this policy provides that there is a period of ten days that this policy must be in force before it can be canceled as against the mortgagee, where the mortgagor has defaulted, and

that a notice must be sent to the mortgagee, and then, upon demand, if it wants the policy to remain in force, it must pay the premium. Now there is no obligation upon the part of the mortgagee to pay until after a demand has been made; and when must that demand be made? Why, manifestly it must be made within a reasonable time.

What are the facts in the instant case? For more than a year this mortgage had run; the Metropolitan Insurance Company believing, of course, or thinking, that the premium had been taken care of, kept these policies as security in their possession. Then after a year had elapsed, when the mortgagor had become insolvent, a demand was made upon the Metropolitan Company for the payment of the premiums, and it immediately declined to pay them and returned the policies. Now for what reason can it be argued that they have failed to comply with whatever duty was imposed upon them? Is it possible that notice could be withheld from them until a whole year thereafter, and then make them responsible for past premiums which they cannot recover from an insolvent mortgagor? But it is argued that, if the fire had occurred during this interval, the Metropolitan could have recovered the insurance. There can be no doubt about that, but the insurance company would have a right to deduct the premium, and it could have charged it up against the amount of money that was coming to the mortgagee. We do not see how this affects the right of the mortgagee under this sort of a clause. Besides, the mortgagee, if a demand were made upon it for the premium, and notice given that the premium was not paid, might elect to foreclose its mortgage rather than be responsible for the premiums.

It is argued that, in case the insurance company refused to pay the premium and had the policies canceled, it would be compelled, in a case like the instant one having a million dollar mortgage or more, to have the property insured, and it is therefore argued that, that being so, they ought to be liable for this policy. The fallacy of that argument is that the claim, as it stands in the instant case, is for insurance that is past, and the mortgagee, to protect itself in the future, would be compelled to have the policies renewed or extended into the future. Now if they have the right to refuse to pay this premium and have the policies canceled, they could then reinsure, and they would only be liable for the insurance that they themselves had contracted for and were liable for, which we think is a complete answer to the argument of counsel.

We are satisfied from the authorities in this case, from the reasonable construction of the clauses in the policy, from the customs which go to make up the giving of mortgages, and from the fact that the clause protecting the mortgagee is well established in this state, that the clause referred to is only a condition and not a covenant.

Holding these views, it is manifest that the court below was wrong and erred in rendering judgment against the Metropolitan Life Insurance Company for the premium, and for the reasons that we have outlined the judgment will be reversed, and final judgment entered for the plaintiff in error, defendant below.

*Judgment reversed and judgment for plaintiff in error.*

SULLIVAN, P. J., and LEVINE, J., concur.